## Norfolk and Western Railroad Co. *versus* The Commonwealth.

1. A local corporation which contributes only its own local right of traffic to a system of through traffic by means of contract arrangements with other local companies cannot for that reason be permitted to exercise corporate franchise within a foreign jurisdiction free of such burdens as may be imposed by such foreign jurisdiction upon the theory that it is engaged in inter-state commerce.

2. The office license tax imposed upon foreign corporations having offices or places of business within the commonwealth by the 16th section of the Act of June 7th, 1879, P. L., 120, is not a tax upon the business or property of the corporation, and when imposed upon a foreign railroad company it is not in conflict with the commercial clause of the Federal Constitution, Art. I, section 8, clause 4.

June 3d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Common Pleas of *Dauphin county*: Of May Term, 1886, No. 21.

This was an appeal to said court by the Norfolk and Western Railroad Co., from the settlement of the Auditor-General and the State Treasurer of the following account against said company:—

*Norfolk and Western Railroad Company, in account with the Commonwealth of Pennsylvania—Dr.*

For office license, per section 16, Act of 7th June, 1877, as per application herewith filed, from July 1st, 1883, to July 1st, 1884.

Total authorized capital stock, - - $25,000,000
License fee, at rate of one-fourth mill on each dollar
of authorized capital, - - - - - $6,250 00
Due Commonwealth, - - - - $6,250 00

The said company filed the following appeal:—

[Norfolk & Western R. R. Co. v. Commonwealth.]

In the matter of the account settled by the Auditor General, July 14th, 1883, and approved by the State Treasurer, July 16th, 1883, for $6,250, claimed to be due from the Norfolk and Western Railroad Company for office license from July 1st, 1883, to July 1st, 1884.

The said Norfolk and Western Railroad Company hereby appeals from said settlement to the Court of Common Pleas of Dauphin county, and together with a copy of the account, files the following specifications of objections thereto, agreeably to the provisions of the Act of Assembly in such case made and provided.

The said account is erroneous and illegal, and the said company is not bound to pay the same nor any part thereof, because—

1. The sixteenth section of the Act of June 7th, 1879, upon which said section the account appealed from purports to be based, is void and of no effect, because in conflict with section three of article three of the Constitution of the State of Pennsylvania, the subject of the said section, to wit: the prohibition of foreign corporations from having officers in the state without being licensed, not being clearly expressed in the title of the Act.

2. If the fee required by the sixteenth section of the Act of 1879, to be paid for an office license, shall be construed to be a *tax*, then the said requirement of the said section is in conflict with section one of article nine of the Constitution of Pennsylvania, which provides that " all taxes shall be uniform upon the same class of subjects," and is therefore void.

3. The sixteenth section of the Act of June 7th, 1879, is void, because in conflict with clause four, of section eight, of article one of the Constitution of the United States, which provides that " Congress shall have power to regulate commerce with foreign nations, and among the several states."

4. The sixteenth section of the Act of June 7th, 1879, is void, because in conflict with clause one, of section two, of article four of the Constitution of the United States, which provides that " the citizens of each state shall be entitled to all the privileges of citizens of the several states."

5. The sixteenth section of the Act of June 7th, 1879, is an abridgement of the privileges and immunities of citizens of the United States. It discriminates between corporations of the state of Pennsylvania and corporations created by other states; it discriminates between corporations and natural persons having offices in this commonwealth; it discriminates between foreign corporations, and it denies to foreign corporations, and to natural persons connected with such corporations, the equal protection of the laws, and is for these reasons void,

4 AMERMAN —17

[Norfolk & Western R. R. Co. *v.* Commonwealth.]

because in conflict with the Fourteenth article of the amendments to the Constitution of the United States, and also because in conflict with the Act of Congress—Revised Statutes, section 1977.

6. As the Norfolk and Western Railroad Company does invest and use and employ capital within the commonwealth of Pennsylvania, it is not within the terms and intendment of the sixteenth section of the Act of June 7th, 1879, and is not, by said section, required to obtain an office license, or pay a license fee.

7. The Norfolk and Western Railroad Company is taxable upon its capital stock under the fourth section of the Act of 1879, and is by the terms of the proviso to the sixteenth section of the said Act, excluded from the operation of the said sixteenth section.

The case having been heard by agreement, without the intervention of a jury, as provided by the Act of April 22d, 1874, the court, McPHERSON, J., directed judgment to be entered in favor of the commonwealth and against the defendant for $8,347.97, made up of the following items, viz.:—

Amount of Auditor General's settlement,  -  - $6,250 00
Attorney General's commission of five per cent.,   312 50
Interest at 12 per cent., from Sept. 14th, 1883,
   to Feb. 1st, 1886,   -   -   -   -   - 1,785 47
                                                  $8,347 97

Upon exceptions, the interest was reduced from
   12 per cent. to 6 per cent., and judgment entered for   -   -   -   -   -   -   - $7,503 12

A like appeal was filed by The Shenandoah Valley R. R. Co., which raised the same points of law. These two appeals were tried together.

The following are the facts in these cases, as appear from the opinion of McPHERSON, J.:—

1. The defendant is a railroad corporation, existing under the laws of the states of Virginia and West Virginia, and its main line and branches lie wholly within these states.

2. Its line of railroad connects at several points with the railroads of other corporations, and by virtue of these connections and certain traffic contracts and agreements, it has become a link in a through line of road, over which, as part of the business thereof, freight and passengers are carried into and out of this commonwealth.

3. Its authorized capital stock is twenty-five millions of dollars.

4. From July 1st, 1883, to July 1st, 1885, it had an office in this commonwealth for the use of its officers, stockholders, agents and employés. Its main office is at Roanoke, Virginia.

5. During this period it expended a considerable amount of money in Pennsylvania in the purchase of materials and supplies for the use of its road; but, with but trifling exceptions, it owns no property and has no capital invested for corporate purposes in this commonwealth.

6. It has paid no office license fee for the years named, as required by section sixteen of the Act of 1879 (P. L. 120). Upon this section these settlements are based.

The following is the opinion of the court in The Shenandoah Valley R. R. Co.'s case, the legal questions in the two cases being the same, but one opinion was filed:—

Our conclusions of law may be briefly stated. The first, second, fourth and fifth specifications of appeal in each case are identical with those passed upon by this court and by the Supreme Court in Conglomerate Mining Co. v. Commonwealth, 13 W. N. C., 522, and upon the authority of that decision must be overruled.

The third specification in each case denies the validity of the settlement, asserting that the office license fee now in controversy is in conflict with the commercial clause of the Federal Constitution, Art. I., section 8, clause 4. This question was not decided in the case above cited, because no facts were proved upon which to rest the claim. Certain facts are now proved, as set forth in paragraph two, but we do not think they are sufficient. The defendant is a foreign corporation, carrying freight and passengers upon a line of railroad lying wholly without this commonwealth. In strictness it has no existence herein, and it certainly does not of itself carry any person or anything hereinto or hereout. At the end of its road it receives or delivers to or from connecting roads certain freight and passengers, which by such roads are carried into or have been carried out of this state, and it has traffic contracts with these roads which affect such reception and delivery. But since it does not itself transport between Pennsylvania and other points, we are of the opinion that it cannot claim the protection of the commercial clause against the license fee in suit. The view contended for results in this: That as soon as a through freight or passenger line is established by contracts between distinct corporations, each corporation in the line is engaged in inter-state commerce so far as through business is concerned, and may establish an office in every state touched or crossed by any part of the line, although that state may have refused the privilege, or may have agreed to grant it only on condition that payment be made therefor.

Thus, the question whether a corporation was engaged in inter-state commerce would often depend, not upon the business which it was lawfully doing, but upon its contracts with

other corporations, and even upon the good faith with which they were kept. If by contract a "through line" was established and continued to be maintained, inter-state commerce would exist as to all contracting parties. If there was no such contract, or if it should be broken, there would be no such commerce, save as to the party directly carrying between the states, while in both instances the nature of the business done by each would be the same. We think the existence of connections or of traffic contracts connot be decisive. If a through line is made up of several distinct corporate agencies, each must be judged by the actual corporate business which it actually does; and where, as in this case, it only carried persons or goods over a space which is wholly within one state, such carriage is the proper test of its commercial character in an inquiry like this. No doubt, in one sense it is engaged in inter-state commerce, for it helps to carry from a point in one state to a point in another state, but the meaning of the commercial clause cannot be thus wide. In the same sense it might be said, with equal force, that a merchant in New York who sells and ships goods to the West is also engaged in inter-state commerce because he helps to carry by hauling the goods from his store to the railway station. Surely if no other clause of the Federal Constitution gave him the right to have an office in Pennsylvania, the commercial clause alone would not support his claim to enjoy that privilege in the face of hostile legislation by the state.

We have been referred to no authority which takes the defendant's view, and we do not think the principle which underlies the commercial clause extends so far. If the chartered power of a corporation embraces commerce between two states, it then becomes, of course, an inter-state agency, and the question now pressed upon us would require decision; but, while it has no such chartered power, its corporate activity is properly to be exercised within the limits of the sovereignty which gave it being, and its power to act beyond those limits depends, speaking generally, upon the silent or express permission of the sovereignty whose borders it may desire to cross. We will not decide that the inherent right of a state to exclude foreign corporations, or to prescribe the terms upon which they may be admitted, can be taken away by a private contract to which it is not a party.

For the purposes of this case, we assume that the licence fee before us would be a regulation of commerce if sought to be imposed upon a corporation lawfully engaged in the business of inter-state transportation. Whether, in every case, an office licence fee would be such a regulation, we do not

decide. If the view above stated is correct, the question does not now arise.

The sixth and seventh specifications in each case assert that the expenditure of money, as set out above in paragraph five, is the investment, use, and employment of a part of defendant's capital in this Commonwealth, within the meaning of the section upon which these settlements stand, and therefore that the defendant is chargeable, not under that section, but only under section four, upon a proper proportion of its capital stock. This question, however, has been ruled against the defendant in Com. v. Standard Oil Co., 101 Pa., 148, and in the second writ of error taken by the Conglomerate Mining Co., (decided in October, 1884,) and does not need further discussion.

The defendant's points in each case are refused, and we hold that the commonwealth is entitled to recover. Judgment was accordingly entered as shown above for the Commonwealth in the sum of $7,503.12.

The Norfolk and Western R. R. Co. thereupon took this writ, assigning for error the action of the court in overruling the specifications of appeal, and in directing judgment to be entered for the Commonwealth.

*M. E. Olmsted,* for plaintiff in error.—The Norfolk and Western Railroad Company is lawfully engaged in the business of inter-state transportation.

It is conceded in the opinion of the court below that if the above proposition is true, the claim of the Commonwealth must fall. " We assume," says the learned judge who delivered the opinion, " that the license fee before us would be a regulation of commerce if sought to be imposed upon a corporation lawfully engaged in the business of inter-state transportation."

And again, he says: " If the chartered power of a corporation embraces commerce between two states it then becomes, of course, an inter-state agency."

But it is assumed in the decision that " while it (the corporation) has no such chartered powers, its corporate activity is properly to be exercised within the limits of the sovereignty which gave it being," and that because the railroad of this corporation is wholly without the state of Pennsylvania, and because there has not been shown to be contained in its charter any express power to transport freight and passengers beyond the line of its own road, or to contract for such transportation, it is not, therefore, lawfully engaged in the business of inter-state transportation, and is not within the protection

of the commercial clause of the Constitution of the United States.

A reference to the authorities will succesfully establish an entirely different conclusion.

It has been repeatedly decided, and would seem to be settled, that upon general principles, and without any provision of the kind whatever in its charter, every railroad company may engage in business as a common carrier for the transportation of freight and passengers upon lines other than its own, and even beyond the limits of its own state: Lock Company v. Railroad Company, 48 New Hampshire, 339–363; Bradford v. Railroad Co., 7 Rich., 201; 2 Redfield on Railways, 104; Wyman v. C. & A. R. R. Co., 4 Mo. App., 35; Stewart v. Erie & Western Transportation Co., 17 Minn., 372; R. R. Co. v. Pratt, 22 Wall., 123; Burtis v. Buffalo & St. Lawrence R. R., 24 N. Y., 269; Root v. Great Western Railroad, 45 New York, 524; Bissell v. Michigan Railroad, 22 Id., 258; Buffett v. Troy & Boston Railroad, 40 Id., 168; Hill Manufacturing Company v. Boston & Lowell R. R. Co., 104 Massachusetts, 128; Feital v. Middlesex Railroad, 109 Id., 398; Railroad Company v. Androscoggin Mills, 22 Wall., 594; Rice v. Railroad Company, 3 Missouri Appeals, 1; Muschamp v. Railroad Company, 8 Mees. & W., 421; Weed v. Railroad Company, 19 Wend., 534; McClure v. Railroad Company, 13 Gray, 124; Barton v. Wheeler, 49 N. H., 25; Cincinnati, &c., R. Co. v. Spratt, 2 Duv., 4; Quimby v. Vanderbilt, 17 N. Y., 306; Chouteaux v. Leach, 18 Pa. St., 224; Boston etc., Steamboat Co. v. Brown, 54 Id., 77; Hart v. Railroad Company, 4 Seld., 37; Block v. Erie & North Shore Despatch Frst Freight Line, 21 Am. & Eng. Cases, 1.

Railroad companies under the 1st section of Art. XVII, of the Constitution of Pennsylvania are compelled to contract with other companies for transportation of freight.

The Supreme Court of the United States has held that the transportation by the Philadelphia and Reading Railroad Company of coal intended for exportation beyond the limits of the state of Pennsylvania is inter-state commerce; and that the company cannot be compelled to pay a tonnage tax which the state attempted to impose upon it because of its transportation of such freight: State Freight Tax, 15 Wall., 232.

In Foster v. Davenport, 22 Howard, 244, the Supreme Court decided that a state law was unconstitutional which required a license of a steamboat employed as a lighter and towboat upon waters wholly within the state of Alabama, the reasons for the decision being that the boat was sometimes engaged in lightering goods to and from the wharves of the city of Mobile and larger vessels engaged in foreign and inter-state commerce,

whose size and the shallowness of the water prevented them from loading and unloading at the wharves.

See also to the same effect, Welton v. New Orleans, 112 U. S., 69; Walling v. Michigan, 116 U. S., 446; Pickard v. Pullman Southern Car Co., 6 U. S. Sup. Court Reporter, 643; Cooper Mfg. Co. v. Ferguson, 113 U. S., 727.

*Lewis C. Cassidy*, Attorney General and *Robert Snodgrass*, Deputy Attorney General of Pennsylvania for the Commonwealth, defendant in error.—The validity of the office license tax, imposed by the sixteenth section of the Act of June 7th, 1879, has been before this court in three different cases: In Conglomerate Mining Co. v. Commonwealth, 13 W. N. C., 522, all the questions raised by this writ of error were authoritatively settled, except those which object to the tax on the ground that it is a regulation of commerce.

As we understand the argument submitted for the plaintiff in error, it practically assumes that the license fee in question is a regulation of commerce, and, as such, is within the prohibition of the constitution of the United States. The position thus taken is based upon the fact that the taxable corporation, by means of traffic contracts with connecting lines is engaged in the business of inter-state transportation.

The license tax, or fee, exacted from foreign corporations which do not "invest and use" their capital in this state, is in the nature of a franchise tax, imposed for the privilege of having an office, or offices, within the state "for the use of their officers, stockholders, agents, or employees." Practically, it is imposed for the privilege of exercising the franchise of being a corporation within the state, and is in no sense a tax upon either the business or property of the corporation. The distinction thus suggested is a very clear one. As a license, it is required as a condition precedent before the corporation can have an office within the state for the use of its officers, stockholders, etc. As a tax upon property or business, it could only be imposed upon the property within the jurisdiction of the state, or upon the business done within her territorial limits, after all conditions precedent had been complied with: Cooley on Taxation, 386; Burroughs on Taxation, § 79.

A license tax is not a regulation of commerce: License Tax cases, 5 Wall., 471; Osborne v. Mobile, 16 Wall., 479; Ward v. Maryland 12 Wall., 418.

There is no limit to the power of a state to impose license taxes where there is no discrimination as between different states; and where the tax is not directly laid upon the subjects of commerce. A corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty," and

when it does attempt to go into another jurisdiction, it can go there only upon compliance with the terms which may be imposed upon it for exercising that privilege: Canada Southern R. R. Co. *v.* Gebhard, 109 U. S., 537; Railroad Co. *v.* Koontz, 104 U. S., 12; Goodwin *v.* Colorado Mortgage Co., 110 U. S., 1; Doyle *v.* Insurance Co., 94 U. S., 535; Commonwealth *v.* Standard Oil Co., 5 Out., 119.

Mr. Justice GREEN delivered the opinion of the court, October 4th, 1886.

The very able argument of the learned counsel for the plaintiff in error has failed to convince us of the correctness of his conclusions. The transportation which this railroad company may lawfully conduct, by virtue of its own corporate franchise, is not inter-state transportation at all, but is confined to territorial limits which are entirely without the state of Pennsylvania. . In other words, this company has no corporate franchise to carry any freight or passengers from or to any point in Pennsylvania; hence, as to Pennsylvania, its transportation authorized by its charter cannot be regarded as inter-state transportation in any point of view. The through transportation in which it does participate within its own territorial limits, is carried on by force of certain contracts into which it has entered with other railroad companies, owning other lines of road, with which this company connects, and in the sense that the carriage of freight and passengers over such through routes from one state to another is inter-state commerce, the proportion which this company contributes to such carriage may be regarded as a portion of such commerce. But that is not the sense in which, as we understand it, the commercial clause of the Federal Constitution is to be interpreted when its immunity is invoked by a particular corporation or person engaged in the transporting business. We understand that its protection is extended only to such transportation as is completely and lawfully authorized to be conducted from one state to another. We have carefully examined all the authorities cited for the plaintiff in error, and do not find that they either expressly or inferentially decide that a local corporation, which contributes only its own local right of traffic to a system of through traffic, by means of contract arrangements with other local companies, can for that reason be permitted to exercise its corporate franchise within a foreign jurisdiction free of such burdens as may be imposed by such foreign jurisdiction, upon the theory that it is engaged in inter-state commerce. Anything short of this will not suffice for the exigencies of the present case.

We concur entirely with the views so lucidly and forcibly

expressed by the learned court below in the opinion in the Shenandoah Valley case, adopted in this case, and on that opinion, with the brief remarks above expressed, we affirm this judgment.

Judgment affirmed.