## WILLIAMS *v.* FEARS, sheriff, *et al.*

1. The term "emigrant agent," in the general tax act of 1898, means a person engaged in hiring laborers in this State to be employed beyond the limits of the same.

2. The imposition of a tax upon such a person is not a regulation of interstate commerce.

3. A law imposing a tax upon such a person is not such a restriction upon the right of a citizen to move from one State to another as that it abridges the privileges or immunities of citizens of the United States, within the meaning of the fourteenth amendment to the constitution of the United States. Nor is such a law such a discrimination in favor of persons hiring laborers to be employed within the limits of the State as to amount to a denial of the equal protection of the laws, within the meaning of that amendment. The case of *Shepperd* v. *Commissioners,* 59 *Ga.* 535, upon a review thereof, is affirmed.

4. Nor is such a law violative of any provision of the constitution of this State.

Submitted March 20, — Decided April 11, 1900.

Habeas corpus. Before Judge Hart. Morgan superior court. January 16, 1900.

*James Davison* and *R. J. Jordan,* for plaintiff.

*H. G. Lewis, solicitor-general,* and *E. W. Butler,* for defendants.

COBB, J. Williams was arrested upon a warrant charging him with "the offense of acting as emigrant agent without a license." He made application to the judge of the superior court of the Ocmulgee circuit for a writ of habeas corpus, alleging that the warrant under which he was arrested charged him with a violation of that provision of the general tax act of 1898 which imposed "upon each emigrant agent, or employer or employee of such agents, doing business in this State, the sum of five hundred dollars for each county in which such business is conducted." Acts 1898, p. 24. He further alleged that the law which he was charged with having violated was in conflict with certain provisions of the constitutions of the United States and of the State of Georgia, enumerating in the application the various clauses of which the act was alleged to be violative. The writ of habeas corpus was issued, and on the day fixed for the hearing the officer having the accused in custody appeared, produced the prisoner, and answered that he had him in custody under a warrant of the character alleged. No evidence was offered, and the judge, after hearing argument upon the application and answer, remanded the prisoner to the custody of the officer having him in charge, to be held by him until discharged by due process of law. To this ruling the accused excepted.

1. The tax act of 1898 which embraces the tax in the language above quoted provides that before any person shall be authorized to carry on the business of an emigrant agent he shall go before the ordinary of each county in which such agent proposes to do business, and register his name and place of business, and at the same time pay the tax to the tax-collector. If he fails to register with the ordinary, he is guilty of a misdemeanor, or if, having registered, he fails to pay the tax, he is likewise guilty of a misdemeanor. Acts 1898, pp. 24, 27. The warrant was issued upon an affidavit charging the accused with having violated the above-quoted provision of the tax act. It does not distinctly appear whether he is charged with having done business without registering, or whether, having registered, he carried on the business without paying the tax. As an affidavit to authorize the issuance of a warrant need not set

forth the offense with the same particularity required in indictments, the charge in the affidavit, although general in its nature and to some extent indefinite, would be sufficient to authorize the issuance of a warrant under the laws of this State. *Williams* v. *State*, 107 *Ga.* 693; *Brown* v. *State*, 109 *Ga.* 570. It is immaterial to a consideration of the question involved in the present case whether the accused was charged with having carried on the business of an emigrant agent without having registered, or without having paid the tax, for the reason that if the provision of the tax act imposing the tax is unconstitutional, he can not be punished for a failure to do either.

It becomes necessary at the outset to determine what is meant by the term "emigrant agent," as used in the above-quoted provision of the tax act. An emigrant is defined to be: "One who emigrates or quits one country or region to settle in another." Web. Int. Dict. "An emigrant is one who quits his country for any lawful reason, with a design to settle elsewhere, and takes his family and property with him." 10 Am. & Eng. Enc. L. (2d ed.) 1042. To emigrate is "to remove from one country or State to another, for the purpose of residence." Web. Int. Dict. In the absence of a contrary reason to be found in the legislation of this State, the word "emigrant" would be given its ordinary meaning; and therefore an emigrant agent doing business in this State would be held to be one engaged in the business of removing, or inducing, or assisting to remove persons domiciled in this State to another country or State for the purpose of acquiring there a new residence. Is there anything in the legislation of this State requiring that the term emigrant agent should be given a different meaning? The term appeared for the first time in an act passed in 1876 (Acts 1876, p. 17) which declared that any person carrying on the business of an emigrant agent in this State without having first obtained a license therefor from the ordinary, for which he should pay the sum of $100, should be guilty of a misdemeanor. The term emigrant agent was by this act defined to be: "Any person engaged in hiring laborers in this State, to be employed beyond the limits of the same." In 1877 (Acts 1877, p. 120) an act was passed which declared that "it shall not be lawful for any emi-

grant agent or agents to solicit or procure emigrants to leave the State, or to act in the capacity of emigrant agents for said purpose," without procuring a license from the tax-collector in each county in which such agent proposed to do business, for which he should pay the sum of $500. It is unnecessary in the present case to determine whether either or both of the acts last referred to are still in force, as the provision of the tax act of 1898 is the only subject of attack. We look to these acts, therefore, merely for the purpose of ascertaining the meaning to be given to the term " emigrant agent" as used in the act of 1898. The term was defined in the act of 1876, and this definition has never been changed. The act of 1877 imposed a tax upon emigrant agents, that is, persons engaged in hiring laborers to go beyond the limits of the State, who should solicit or procure emigrants, that is, persons leaving the State for the purpose of changing their residence, to leave the State. In other words, the act of 1876 imposed a tax upon persons who should be engaged in the business of hiring laborers to leave the State, and the act of 1877 simply imposed an additional tax upon such persons if they should also be engaged in soliciting or procuring persons to change their residence from this State to another. In the light of the definition given in the act of 1876, and of the fact that the act of 1877 did not in any way undertake to change this definition, no other construction than the one above indicated can properly be given to the latter act. When, therefore, in subsequent legislation the General Assembly used the term ·" emigrant agent, " with nothing to indicate what was meant by the term, it will be presumed that it had in mind the definition theretofore given to the term. In all of the general tax acts passed after the act of 1877, language similar to that above quoted from the act of 1898 was employed, and it will be held that in those acts the legislature intended by the use of the words " emigrant agent" to impose a tax upon persons engaged in the business of " hiring laborers in this State, to be employed beyond the limits of the same. " The act of 1877 was carried into the Code of 1882, and, notwithstanding the act of 1876 was omitted from that code, the definition of emigrant agent as contained in the latter act was therein embraced. Code of 1882,

§ 4598, (a), (b), (c). It was evidently the opinion of the codifiers that the act of 1877 repealed the act of 1876, except so far as the definition of "emigrant agent" was concerned. Both the act of 1876 and the act of 1877 were omitted from the Code of 1895; the only reference to either act being contained in section 601 of the Penal Code, which provides that "Any person who shall solicit or procure emigrants, or shall attempt to do so, without first procuring a license as required by law, shall be guilty of a misdemeanor." This section was taken from the act of 1877, but the words "any person" were substituted for the words "any emigrant agent," used in that act. It is, however, unnecessary in this case to determine what effect is to be given to this section.

2. This brings us down to that provision of the general tax act of 1898, above referred to, the validity of which is assailed in the present case. It is to be noted that the acts of 1876 and 1877 provided for a license, while the tax acts provide for a tax upon occupation; these acts describing the tax imposed upon emigrant agents as a specific tax, and that occupation being embraced in the act along with other occupations of various character; and the act distinctly recites that it is passed for the purpose of collecting a tax for the support of the government and the public institutions, for educational purposes, and to pay the public debt. It thus being clear that the sum required to be paid is a tax upon an occupation and not a license to do business, the question as to whether it is so excessive as to amount to a prohibition of the carrying on of the business referred to is not involved in this case, nor is such a question at all raised in the present case. Giving to the term "emigrant agent" the definition set forth in the act of 1876, the question to be now considered is whether the State has the power to impose a tax upon a person engaged in that occupation. It is contended by counsel for plaintiff in error that the State has no such power, and in support of this it is argued that the imposition of such a tax is in violation of various provisions of the constitution of the United States and of the State of Georgia. It is said that the law is violative of that provision of the constitution of the United States in which the power is given to Congress to regu-

late commerce among the several States. If the act imposes a tax upon persons engaged in commerce among the States, it is a regulation of such commerce and is void. Such a tax is in effect a tax upon the business itself. This has been so repeatedly ruled by the Supreme Court of the United States that it will not at this day be questioned. Brown v. Maryland, 12 Wheat. 419; Robbins v. Shelby Taxing Dist., 120 U. S. 489; LeLoup v. Port of Mobile, 127 U. S. 640; McCall v. California, 136 U. S. 104; Crutcher v. Kentucky, 141 U. S. 47; Brennan v. Titusville, 153 U. S. 289. Is the law under consideration a regulation of interstate commerce? What is commerce? What does that term as used in the constitution of the United States include? Perhaps the earliest definition of the term to be found in the reports of the United States Supreme Court is that given by Mr. Chief Justice Marshall in Gibbons v. Ogden, 9 Wheaton, 1. On page 188 the Chief Justice said: "Commerce undoubtedly is traffic, but it is something more — it is intercourse. It describes the intercourse between nations and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse." And again he says: Commerce includes "every species of commercial intercourse between the United States and foreign nations." It was decided in that case that navigation was a branch of commerce. In Brown v. Maryland, 12 Wheaton, 419, it was said that commerce includes "trade, traffic, intercourse." In Railroad v. Fuller, 17 Wall, 568, it was said: "Commerce is traffic, but it is much more. It embraces also transportation by land and water, and all the means and appliances necessarily employed in carrying it on." In Gloucester Ferry Company v. Pennsylvania, 114 U. S. 196, it was held: "Commerce among the States consists of intercourse and traffic between the citizens, and includes transportation of persons and property, and the navigation of public waters for that purpose, as well as the purchase, sale, and exchange of commodities." It was further held in that case that "the power also embraces within its control all the instrumentalities by which commerce may be carried on, and the means by which it may be aided and encouraged." In County of Mobile v. Kimball, 102 U. S. 691, it was said: "Commerce

with foreign countries and among the States, strictly considered, consists in intercourse and traffic, including in these terms navigation and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities." In Wabash Railway Company v. Illinois, 118 U. S. 557, 558, Mr. Justice Miller uses this language: "This court holds now, and has never consciously held otherwise, that a statute of a State, intended to regulate or to tax or to impose any other restriction upon the transmission of persons or property or telegraphic messages from one State to another, is not within that class of legislation which the States may enact in the absence of legislation by Congress; and that such statutes are void even as to that part of such transmission which may be within the State." It may be deduced from these decisions that, in general, commerce comprehends traffic, intercourse, navigation, and the transportation of persons and property, and the means and instrumentalities by which these four things are effectuated. If, therefore, the law under consideration seeks to regulate or restrict any one of these four forms of commerce among the States, or if it seeks to burden any instrumentality by which they are carried on, it is void and must be so declared. Dealing with these four branches of commerce in the order named, we will inquire, first, whether the business of "hiring laborers in this State, to be employed beyond the limits of the same," is traffic. 'Traffic is "commerce; trade; sale or exchange of merchandise, bills, money, and the like." Bouvier. "The passing of goods or commodities from one person to another for an equivalent in goods or money." Anderson. As applied to interstate commerce, it has been defined to be: "The sale by itinerant venders, in one State, of the goods, wares and merchandise of other States, and the regulation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made." 11 Am. & Eng. Enc. L. (1st ed.) 544 (n). We do not think the business of procuring labor contracts to be performed in another State can be properly denominated traffic. Labor is not an article of merchandise or a commodity. It is toil, mental and physical. It is a part of the person himself, which he may dispose of it is true, but which is not severable

from him, and which accompanies him wherever he goes. It will not be pretended that persons are the subjects of commerce. Indeed, even when slavery existed in this country, a case arose in which the right of a State to regulate the admission into its territory of slaves from other States was incidentally involved, and the majority of the judges of the Supreme Court as it was then constituted were of the opinion that the State had such right, it not being a regulation of commerce among the States within the meaning of the constitution of the United States. Groves v. Slaughter, 15 Pet. 448. See also Com. v. Griffin, 42 Ky. 208.

Is the law a regulation or restriction of intercourse among the citizens of this State and those of other States? Under this branch of commerce the States are prohibited from passing any law which either restricts the free passage of the citizens of the United States through the several States, or which undertakes to regulate or restrict free communication between the citizens of the several States. A tax on the right of a citizen to leave the State or on the right of a citizen of another State to come into the State is a regulation of interstate commerce, and void. Crandall v. Nevada, 6 Wall. 35; Henderson v. Mayor, 92 U. S. 259; People v. Campagnie Generale Transatlantique, 107 U. S. 59; Passenger cases, 7 How. 282. Nor can a State pass a law which attempts to regulate or restrict communication between the citizens of different States. Western Union Tel. Co. v. Pendleton, 122 U. S. 347; Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1. But the law under consideration in the present case neither regulates nor restricts the right of citizens of this State to leave its territory at will, or to hold free communication with the citizens of other States. The citizen may leave when he pleases, but the person who makes it a business of inducing him to go to perform labor elsewhere must pay an occupation tax. This is certainly no infringement upon the right of the citizen. Nor does the law impose any burden upon any instrumentality by which his free intercourse with the citizens of other States is effectuated.

The law certainly has no reference to navigation. Nor do we think it is a regulation of transportation among the States.

A State has no right to impose a burden upon the means by which persons or property may be transported from one State to another. Morgan *v.* New Orleans, 112 U. S. 69 ; Gloucester Ferry Company *v.* Pennsylvania, 114 U. S. 196. Nor can a State tax an agent of a company engaged in interstate transportation, as was held in McCall *v.* California, 136 U. S. 104. But this law imposes no burden upon transportation companies or their agents. Its connection with transportation is exceedingly remote. That the business of hiring laborers to go beyond the State may increase the business of those engaged in interstate transportation is true, but it is not interstate transportation itself ; and consequently a law imposing a tax upon a person engaged in such a business is not contrary to the interstate commerce clause of the Federal constitution.

We are aware that the Supreme Court of Alabama, in Joseph *v.* Randolph, 71 Ala. 499, s. c. 46 Am. Rep. 347, held an act similar to the one involved in the present case contrary to the interstate commerce clause of the constitution of the United States. But we can not give our assent to the reasoning upon which that decision was based. The decision in State *v.* Moore, 113 N. C. 697, cited in the argument, was based upon provisions of the State constitution, and has no bearing upon this question. No decision of the Supreme Court of the United States was cited, nor have we been able to find any, in line with the ruling made in the Alabama case. Some of the language used by different members of the court when dealing with the subject of interstate commerce may be broad enough to include a law of the character involved in the present case, but this is not true of any decision of that court. The court itself has gone very far in its construction of the commerce clause of the constitution, and we are unwilling to extend the construction farther than its decisions demand.

We conclude that the provision of the general tax act of 1898 imposing a tax upon emigrant agents doing business in this State is not a regulation of, or restriction upon, any business which is properly comprehended within the terms commerce among the States ; and this being so, the law will be held to be valid notwithstanding it may place a burden upon a business

which may be an aid to but not a part of commerce among the States.

3. It is claimed that the imposition of the tax is an interference with the right of a citizen to move from one State to another, and therefore the statute imposing it is a law which abridges "the privileges and immunities of citizens of the United States," within the meaning of the fourteenth amendment to the constitution of the United States. That this objection is without merit will sufficiently appear from what is above said in dealing with the question as to whether the law under consideration is a regulation of interstate commerce.

It is further contended that the law imposing the tax is invalid, because it is violative of that provision of the 14th amendment to the constitution of the United States which declares that no State shall deny to any person within its jurisdiction the equal protection of the laws; the contention being that the taxing of persons engaged in hiring laborers within the State to perform labor beyond the limits of the State, and the failure to tax persons hiring laborers to work within the State, is such a discrimination as to be violative of that provision of the constitution above referred to. A similar objection was made to the act of 1876, and was held by this court not to be well taken, in the case of *Shepperd* v. *Commissioners*, 59 *Ga.* 535. To quote the language of Judge Bleckley in that case is all that is necessary to show that the law is not subject to the objection made. It is there said, referring to the act of 1876: "The act seems to us constitutional. It requires a license as preliminary to carrying on a certain business, and exacts a license fee of one hundred dollars, which fee becomes county revenue. Whoever engages in the business is equally subject to the terms and provisions of the act. No discrimination is made in favor of residents over non-residents. It is said that the discrimination lies in requiring an expensive license as a condition of hiring laborers within the State to be employed beyond the State, without imposing a like burden on hiring for employment within the limits of the State. But the license required is for carrying on a business; and it does not appear that hiring for internal employment has become a business here, or is pursued as such by any

person or persons. This is enough to dispose of the objection. But if it were otherwise, no authority has been cited, and we know of none, that would prevent the State from acting upon occupations (carried on within the State) in a way to incumber some of them with a tax or license fee, and leave other occupations, dissimilar in tendency, though not in nature, to the free will of those who might be inclined to engage in them. Suppose two rival establishments were in active operation in our midst, one engaged in offering the laboring population inducements to leave, and the other engaged in offering them inducements to remain, could not the State discriminate between the two in police and fiscal legislation? Would she be obliged to grant the same indulgence, and show the same favor, to an instrumentality which tended to depopulate her territory, as to one of opposite tendency? It is true that to go out of the State for employment is not necessarily to remove or withdraw permanently; but, doubtless, a large percentage of hirelings who go out on contracts of employment never return. Persons who make it a business to hire laborers here for employment elsewhere may be required to procure and pay for a license." It was insisted in the argument that the decision just referred to was unsound, and permission was asked and granted to review the same with a view to having it overruled. We are satisfied, however, that the conclusion reached in that case was correct, and we adhere to the decision therein rendered.

4. It was claimed that the law was violative of those provisions of the constitution of this State which are embodied in the Civil Code, §§ 5699, 5722, 5732, 5733, 5735, 5771, 5883. In what way the law violates these different provisions of the constitution is not set forth in the pleadings, nor is any reason assigned in the brief of counsel why the law is in conflict with them. We have been unable to discover any antagonism between the law and the clauses of the constitution referred to. The right of the legislature to tax occupations and classify the same for taxation is so well settled now, that such an objection needs nothing more than a passing notice. If the legislation now under review is violative of any provision of the State or Federal constitution, our attention has not been called to the

same, nor are we ourselves aware of any. There being nothing in the constitution of the United States which prohibits this State from dealing with this subject, and there being nothing in the constitution of the State which prohibits the General Assembly from enacting the law in question, it follows that the judge of the superior court did not err in remanding the accused to the custody of the officer having him in charge, to be held by him until discharged by due process of law.

*Judgment affirmed.    All the Justices concurring.*