FRANCIS B. MORRISON *vs.* COMMERCIAL TOW BOAT COMPANY.

Suffolk.    March 19, 1917. — May 26, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Interstate Commerce.   Workmen's Compensation Act.*

Where the mate of a towboat, operating only in Boston Harbor, is at his work on her deck when she is preparing to make fast to a coal barge engaged in interstate commerce for the purpose of towing the barge to certain flats within the harbor, there to be taken in tow by an ocean-going tug and carried to a port in another State, and is injured by steam and boiling water coming from a donkey-engine suddenly started on the deck of the barge, he is a seaman on a vessel engaged in interstate commerce and by the terms of St. 1913, c. 568, unchanged by St. 1914, c. 708, § 13, is excluded from the operation of the workmen's compensation act; and consequently in an action against his employer, who also is the owner of the barge and who is not a subscriber under that act, for his injuries thus sustained he cannot take advantage of the provisions of St. 1911, c. 751, Part I, § 1.

TORT under the workmen's compensation act, St. 1911, c. 751, for personal injuries sustained while the plaintiff was in the employ of the defendant on a towboat in Boston Harbor, the defendant being alleged not to be a subscriber under the act. Writ dated January 18, 1915.

In the Superior Court the case was tried before *Fessenden,* J. The material facts are stated in the opinion. At the close of the evidence by order of the judge a verdict was returned for the

defendant, and the judge reported the case to this court upon the stipulation that if the verdict for the defendant was ordered properly, final judgment was to be entered for the defendant, but that if there was any proper legal evidence to be submitted to the jury, final judgment should be entered for the plaintiff in the sum of $1,000.

St. 1911, c. 751, Part V, § 2, as amended by Sts. 1913, c. 568, § 1; 1914, c. 708, § 13, is as follows: "'Employee' shall include every person in the service of another under any contract of hire, express or implied, oral or written, except masters of and seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer. Any reference to an employee who has been injured shall, when the employee is dead, also include his legal representatives, dependents and other persons to whom compensation may be payable."

B. B. Libby, (G. E. Richardson with him,) for the plaintiff.

E. C. Stone, for the defendant.

DE COURCY, J. This action of tort for personal injuries was brought under the provisions of the workmen's compensation act, St. 1911, c. 751. The plaintiff contends that, as the defendant was not a subscriber under the terms of the act, the defences of contributory negligence, assumption of risk and negligence of a fellow servant are not open to it by virtue of Part I, § 1. The main contention of the defendant is that the plaintiff was not one of those employees for whose benefit the statute was enacted, and that consequently he cannot recover in this action.

The following material facts are taken from the report of the trial judge: The plaintiff was the mate of the Francis C. Hersey, a harbor towboat owned and operated by the defendant. This towboat was engaged entirely within the limits of Boston Harbor. The defendant also owned and operated a barge called the Helen, which admittedly was employed in interstate commerce between Virginia and Massachusetts in the coal trade. When loaded with coal it was drawn by an ocean-going tug from Hampton Roads to Boston, was anchored "down on the flats in the harbor," and from there towed by a towboat like the Francis C. Hersey to the Lewis Coal Wharf in Chelsea. On the morning of the accident the Helen was lying at Lewis Wharf, having completely unloaded

a cargo of coal, and was awaiting the arrival of the tug to start it on its journey south. The tug Hersey came from the defendant's wharf at Boston and ran under the bow of the barge for the purpose of delivering a bundle of fish, which was to be eaten by the crew of the barge on its trip to Virginia, and for the further purpose of towing the barge down to the flats on its journey for more coal. The plaintiff and a deckhand then tied the bundle of fish to a heaving line which was thrown down to the towboat from the deck of the barge. The plaintiff testified that almost immediately after the fish had been hauled aboard the barge, the donkey-engine on the barge was started, without any warning to the plaintiff, and he was injured by the steam and boiling water.

At the time the accident happened, the captain of the Helen was on the wharf for the purpose, preparatory to towing the barge, of casting off a hawser which made the bow of the barge fast to the wharf. The donkey-engine, from which the steam or boiling water came, was used for heaving in hawsers and the anchor-chain, and was started upon the order of the captain given from the dock. After the accident the towboat Hersey took the hawser from the barge Helen and towed the barge down to Castle Island in Boston Harbor where it would lie awaiting an ocean-going tug to tow it to Virginia.

By St. 1913, c. 568, the Legislature expressly excluded from the operation of the Massachusetts workmen's compensation statute "masters of and seamen on vessels engaged in interstate or foreign commerce." See *The Hamilton,* 207 U. S. 398; *Souden* v. *Fore River Ship Building Co.* 223 Mass. 509; Kay's Shipmasters & Seamen (2d ed.) § 467; 35 Cyc. 1244. As the towboat on which the plaintiff was master, plied only within the limits of Boston, Harbor, it may be assumed that at times it was engaged in work that plainly was of intrastate character. The decisive question in this case is, was the towboat Hersey engaged in interstate commerce, within the meaning of the statute, at the time when the plaintiff was injured. And the test of that employment is, was the Hersey at that time "engaged in interstate transportation or in work so closely related to it as to be practically a part of it." See *Shanks* v. *Delaware, Lackawanna & Western Railroad,* 239 U. S. 556, 558.

Interstate commerce in a legal sense embraces not only the

transportation of freight from one State to another but every link in that transportation, whether or not some of the links are entirely within one State. In *Foster* v. *Davenport*, 22 How. 244, it was held to extend to a steamboat employed as a lighter and towboat in the harbor of Mobile. In that case, Mr. Justice Nelson, speaking for the court, said, ". . . this steamboat was employed in aid of vessels engaged in the foreign or coastwise trade and commerce of the United States, either in the delivery of their cargoes, or in towing the vessels themselves to the port of Mobile. The character of the navigation and business in which it was employed cannot be distinguished from that in which the vessels it towed or unloaded were engaged. The lightering or towing was but the prolongation of the voyage of the vessels assisted to their port of destination." And in *Harman* v. *Chicago*, 147 U. S. 396, an ordinance of that city imposing a license tax for the privilege of navigating the Chicago River and its branches upon steam tugs was held to be unconstitutional as a burden and restraint upon interstate commerce, over which Congress has control. See also *The Daniel Ball*, 10 Wall. 557; *Northern Pacific Railway* v. *Washington*, 222 U. S. 370.

At the time of the plaintiff's accident the tug Hersey had run under the bow of the barge Helen, preparatory to towing it down to the flats. The captain of the Helen was on the wharf for the purpose of casting off the hawser; and the donkey-engine, which was used in heaving in the hawser, was started. At that time the purpose of the movements of the plaintiff and of the tug, was to reach and move an interstate vessel. See *Louisville & Nashville Railroad* v. *Parker*, 242 U. S. 13, 14. In *North Carolina Railroad* v. *Zachary*, 232 U. S. 248, it was held that acts of a locomotive fireman in oiling and preparing his engine for a trip to move freight in interstate commerce, although done prior to the actual coupling up of the interstate cars, are acts done while engaged in interstate commerce under the federal employers' liability act. It was said in *St. Louis, San Francisco & Texas Railway* v. *Seale*, 229 U. S. 156, 161, that interstate transportation is not ended by the arrival of the train at the terminal, "Whether they were going further or were to stop at that station, it still was necessary that the train be broken up and the cars taken to the appropriate tracks for making up outgoing trains or for unloading or delivering

freight, and this was as much a part of the interstate transportation as was the movement across the state line." And in *New York Central & Hudson River Railroad* v. *Carr,* 238 U. S. 260, it was held that a brakeman on an intrastate car in a train consisting of both intrastate and interstate cars who is engaged in cutting out the intrastate car so that the train may proceed on its interstate business, is while so doing engaged and employed in interstate commerce, within the federal employers' liability act. See also *Pedersen* v. *Delaware, Lackawanna & Western Railroad,* 229 U. S. 146; *The Hazel Kirke,* 25 Fed. Rep. 601; *Erie Railroad* v. *Jacobus,* 221 Fed. Rep. 335; *S. C.* 137 C. C. A. 151; *Corbett* v. *Boston & Maine Railroad,* 219 Mass. 351, 356; *Marconi Wireless Telegraph Co.* v. *Commonwealth,* 218 Mass. 558. We are of opinion that the towboat Hersey was "engaged in interstate . . . commerce," at the time when the plaintiff was injured, within the principle of these cases.

This conclusion renders it unnecessary to consider the further contention of the defendant that the Hersey was engaged in interstate commerce by reason of the fact that it was transporting a bundle of fish to the barge Helen where it was to be eaten by the crew of the barge on its trip to Virginia. See *United States* v. *Colorado & Northwestern Railroad,* 157 Fed. Rep. 342; *Northern Pacific Railway* v. *Washington,* 222 U. S. 370; *United States* v. *Colorado & Northwestern Railroad,* 85 C. C. A. 27.

The instant case is reported upon the stipulation that if the verdict for the defendant was properly ordered final judgment is to be entered for the defendant. As the plaintiff's sole claim was made under St. 1911, c. 751, and as that statute is not applicable to "masters of and seamen on vessels engaged in interstate or foreign commerce," for that reason and in accordance with the terms of the report the entry must be

*Judgment for the defendant.*