# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## OCTOBER TERM, 1918.

---

### 9913. CHAMBERS ·v. THE STATE.

An emigrant agent is one who is engaged in hiring laborers in this State
to be employed beyond the limits of the State, and who makes that work
his business or occupation.

DECIDED NOVEMBER 7, 1918.

Accusation of misdemeanor; from city court of Cartersville—
Judge Aubrey. May 13, 1918.

*J. R. Whitaker, W. T. Townsend,* for plaintiff in error.

*Watt H. Milner, solicitor, J. M. Neel Jr.,* contra.

BLOODWORTH, J. The indictment in this case charges that the
defendant did "unlawfully conduct and offer to conduct the busi-
ness of an emigrant agent without first registering with the ordi-
nary of said county, and paying the tax of $500.00 as required by
law." There was a verdict of guilty, and a sentence of one thous-
and dollars or six months in the chain-gang. On the trial Lester
Davis testified: "Wednesday morning of this week Mr. Vaughan
brought me and Gordon Bates to court to Cartersville, and we
came on the L. & N. train. Soon after we arrived————
and I were standing at the depot here in Cartersville, when the
defendant came to us and asked us if we did not want to go to
Tennessee to work, that he was going and was going to get $2.50
per day wages, and that we would get the same if we would go.
He showed us a picture of the places where we would live. I told
him that I was working for Mr. Vaughan and that I could not go

and leave my family. He stated to me that I could send back and get my family. . . The defendant did not say that he would pay me $2.50 per day if I would go to Tennessee. He just told me that I could get $2.50 a day up there. I did not know the defend-ant until I saw him at the depot that morning. He said he had a ticket and was going to Tennessee to work, and asked me to go with him. He did not offer to pay my way, but asked me to go and work." The evidence of Dave Vaughan, Esq., was the same, in substance, as that of Lester Davis. Mr. Lester Pettit testified: "I am emigrant agent here for the Aluminum Company of America of Maryville, Tennessee. I have paid the tax of $500 to the tax-collector of Bartow county, and have my receipt for same [at this time the receipt mentioned by the witness was exhibited and intro-duced in evidence]. This defendant Moses Chambers came to my house Tuesday night about seven or eight o'clock and told me he was looking for a job and had been sent to me. I told him to come back this morning and gave him twenty-five cents to get him something to eat, and told him where the negro restaurant was. He came back to my house this morning and I made a trade with him to go to Maryville, Tennessee, and bought him a ticket to that place. I did not ask him to try to get anybody to go with him, and thought he had caught the train and gone, until I heard he was arrested." Tom Littlejohn testified in part as follows: "This defendant staid at my house that night and told me he had come to hire to Mr. Pettit, and I learned later that Mr. Pettit hired him to go to Maryville, Tennessee, to work. I don't know where he got the picture, but there was some on the dresser at my house in the room where he slept. I live with Mr. Pettit."

The defendant's statement at the trial was as follows: "A white man in Atlanta sent me to Mr. Pettit here at Cartersville. I was looking for a job. I came up here last Tuesday night on the train, and when I got here I went to see Mr. Pettit and told him I heard he wanted to hire hands to go to Tennessee to work, and he told me it was then late and I could come back to see him in the morning. He gave me twenty-five cents to get something to eat. I spent the night with the colored man who lives with this white man and went back to see this man, Mr. Pettit, this morn-ing and he told me he would give me $2.50 per day and pay my way up into Tennessee where he wanted me to go to work. I told

him I would go and he bought me a ticket. While I was down at the depot waiting for the train this colored fellow that was on the stand came up to me and asked me where I was going, and I told him I was going to Tennessee to work at $2.50 per day, and asked him if he didn't want to go with me, and he said he couldn't go. I did not try to hire him or anybody else. I did show him this picture that I got where I staid that night. It was lying on the table in the room where I slept, and I picked it up and was looking at it, and the man I staid with said it was a picture of the place where I was going to work, so I put it in my pocket. This is all I know about this matter."

In *Theus* v. *State*, 114 *Ga.* 53 (39 S. E. 913), Mr. Justice Lewis, speaking for the court, said: "In the case of *Williams* v. *Fears*, 110 *Ga.* 584 [35 S. E. 699, 50 L. R. A. 685], will be found an exhaustive and able discussion of the meaning of the term 'emigrant agent' as used in the general tax act of 1898, under which the accusation in this case was brought. An emigrant agent was there defined as 'a person engaged in hiring laborers in this State, to be employed beyond the limits of the same.' See also, to the same effect, *Varner* v. *State*, 110 *Ga.* 596 [36 S. E. 593]. To be engaged in a work, in the sense contemplated by the acts imposing taxation, would seem to necessarily imply that the person so engaged must make that work his business or occupation." Applying this principle to the evidence in the instant case, we think it quite evident that the defendant was not "engaged" in the business of an emigrant agent; and therefore the evidence did not authorize the verdict, and a new trial should have been ordered.

*Judgment reversed. Broyles, P. J., and Harwell, J., concur.*