## 31290. AMERICAN FIDELITY & CASUALTY COMPANY INC. *v.* THOMPSON.

DECIDED SEPTEMBER 5, 1946.

*Andrews & Nall, Hal Lindsay, A. C. Latimer,* for plaintiff in error.

*William Lamar Hailey,* contra.

PARKER, J. Mrs. Thompson (the defendant in error) sued Florida Motor Lines Corporation, a common carrier for hire, and American Fidelity and Casualty Company Inc. (the plaintiff in error), as its insurer, for damages for injuries alleged to have been received in an accident at Fort Pierce, Florida. It was alleged that Florida Motor Lines Corporation operated busses between Jacksonville and Miami, Florida, and also operated "in interstate commerce in transporting passengers for hire into or through

Georgia with trips originating in Florida" (par. 4) ; and that the plaintiff purchased a ticket at the bus terminal in West Palm Beach, Florida, which entitled her to passage on the defendant carrier's bus from West Palm Beach "via and through the State of Georgia" to Greenwood, South Carolina, and that after boarding the bus she was transported as far as Fort Pierce, where the injuries were sustained (par. 9).

American Fidelity and Casualty Company Inc. filed an answer subject to a general demurrer, and a plea of misjoinder of causes of action, but only the answer appears in the record. No appearance was made for the other defendant so far as the record shows. The plaintiff amended her petition by striking the name of Florida Motor Lines Corporation as a party defendant, and by alleging that at the time of the accident referred to in the original petition Florida Motor Lines Corporation "was engaged wholly in intrastate business, and that the ticket referred to in paragraph 9 of plaintiff's petition designated that she [was] entitled to passage on bus of Florida Motor Lines only so far as Jacksonville, Florida, and from there on to Greenwood, South Carolina, over the Greyhound Line."

The plaintiff testified on the trial in part as follows: "I had gotten on the bus at West Palm Beach coming to Greenwood, South Carolina. . . My ticket was bought to Greenwood, South Carolina. . . I bought a ticket at West Palm Beach to Greenwood, South Carolina, over the Florida Motor Lines and got on the bus to go to Greenwood. I was going to stop in Greenwood, where I had two daughters. I was not going to stop anywhere between West Palm Beach and Greenwood; I was going direct." Upon being recalled after the defendant had rested, the plaintiff testified further as follows: "You ask me whether I planned any stopover from West Palm Beach to Greenwood, and you state my answer was that I did not—I didn't stop but I changed busses at Jacksonville, is the only stop. I didn't stop to visit anybody, but I mean I changed busses in Jacksonville; I left the Motor Line bus there and caught a Greyhound. I bought a ticket from the Florida Motor Lines in West Palm Beach. That ticket called for Jacksonville because the bus didn't come out of there. The Florida Motor Lines doesn't run out of Jacksonville, and the remaining portion of the ticket called for Greenwood on the Greyhound bus. I bought

my ticket in West Palm Beach direct through to Greenwood, and made a change in Jacksonville; changed busses in Jacksonville."

The plaintiff offered in evidence the provisions of the Florida statutes applicable to the regulation and control of auto transportation companies transporting persons or property, and providing for the giving of bonds or the filing of insurance policies to indemnify passengers and the public sustaining personal injuries for any act of negligence of such companies and for damages to property. The statutes tendered in evidence authorized a direct action on such bonds or insurance policies "by any person or persons who shall have sustained an actionable injury protected thereby." Counsel for the defendant objected to this evidence upon the grounds, that it was immaterial and inapplicable; that the statutes did not authorize a direct action against the defendant; and that such action would have to be maintained, if at all, under the Federal Motor Carriers Act, in which case a judgment must first have been obtained against the motor carrier before suit against its insurer could be maintained. These objections were overruled and the evidence admitted. The trial resulted in a verdict for the plaintiff. A motion for new trial was duly filed by the defendant. One of the contentions made therein is, that the plaintiff was an interstate passenger on the bus, having bought a through ticket from West Palm Beach, Florida, to Greenwood, South Carolina; that in transporting the plaintiff as a passenger the motor carrier was engaged in interstate commerce; that the Florida statutes, introduced as the basis of the plaintiff's action, could have no application; and that, if such statutes were applied to the transaction involved, they would impose a burden upon interstate commerce and would be in violation of the Federal Constitution. The motion for new trial was overruled and the defendant excepted.

Although some other contentions were either made by the defendant upon the trial, or are included in the amended motion for new trial, we think that this case is controlled by the answer to one question—was the motor carrier transporting the plaintiff in interstate commerce at the time she was injured? If the plaintiff was traveling in an intrastate operation, the suit was maintainable under the direct-action statutes of the State of Florida on which it was based. On the other hand, if the plaintiff was being transported as a passenger in interstate commerce at the time of her

injury, the action was not properly brought and a new trial must be granted.

Interstate commerce consists of intercourse and traffic between the citizens and inhabitants of different States. *American Mills Co.* v. *Doyal,* 46 *Ga. App.* 236 (167 S. E. 312); *Orange Crush Bottling Co.* v. *Tuggle,* 70 *Ga. App.* 144, 148 (27 S. E. 2d, 769). Commerce among the States consists of intercourse and traffic between the citizens, and includes transportation of persons and property, and the means by which these things are effectuated. *Williams* v. *Fears,* 110 *Ga.* 584, 589 (35 S. E. 699, 50 L. R. A. 685). Interstate commerce is commerce between two or more States of the Union. *L. & N. R. Co.* v. *Railroad Comm. of Tenn.,* 19 Fed. 679. The transportation of merchandise and passengers from State to State is interstate commerce, whether carried on by individuals or corporations. *State of Indiana* v. *Pullman Palace Car Co.,* 16 Fed. 193. The interstate carriage of persons for hire is interstate commerce as well as the interstate carriage of goods for hire. *Weimar Storage Co.* v. *Dill,* 103 N. J. Eq. 307 (143 Atl. 438). A connecting carrier over whose line an interstate shipment passes is engaged in interstate commerce with respect to such shipment although its line may lie wholly within one state. *U. S.* v. *Standard Oil Co.,* 155 Fed. 305. A railroad whose own line did not extend beyond the limits of a State, but which connected with other lines extending beyond the State, and which carried both interstate and intrastate shipments, was engaged in interstate commerce. *Hamilton* v. *Louisiana Ry. &c. Co.,* 162 La. 841 (111 So. 184). It is generally held that, where a carrier in one State receives a commodity for shipment by a continuous trip over its own line and connecting lines, giving a through bill of lading to the point of destination, which provides that its own liability shall cease upon delivery to its connecting line at a point within the State where it was received, such transportation is regarded as interstate commerce, and such carrier is but one of several agencies employed. *Texas & P. Ry. Co.* v. *Avery* (Texas Civ. App.), 33 S. W. 704; *State* v. *Gulf C. & S. F. Ry. Co.* (Texas Civ. App.), 44 S. W. 542; *Norfolk & W. R. Co.* v. *Commonwealth,* 114 Pa. 256 (6 Atl. 45). Interstate commerce embraces, not only the transportation of freight from one State to another, but every link in that transportation, whether or not some of the links are

entirely within one State. Morrison *v.* Commercial Towboat Co., 227 Mass. 237 (116 N. E. 499). The rule that the ultimate destination of the goods shipped, or the destination intended by the passenger when he begins his journey, and known to the carrier, determines the character of the commerce—that is, whether it is intrastate or interstate—seems to be established by the decisions of the Supreme Court of the United States. See Philadelphia & Reading Ry. Co. *v.* Hancock, 253 U. S. 284 (40 Sup. Ct. 512, 64 L. ed. 907); Baltimore & Ohio R. Co. *v.* Settle, 260 U. S. 166 (43 Sup. Ct. 28, 67 L. ed. 189); Sprout *v.* South Bend, 277 U. S. 163, 168 (48 Sup. Ct. 502, 72 L. ed. 833, 62 A. L. R. 45).

. Under these authorities, applied to the facts of this case, we think that the plaintiff was being transported in interstate commerce at the time she was injured. Although she alleged in the amendment to her original petition that Florida Motor Lines Corporation was engaged wholly in intrastate business at the time of the accident, the facts otherwise appearing refute this allegation. The plaintiff purchased and was riding on a through ticket from West Palm Beach, Florida, to Greenwood, South Carolina, and the motor carrier knew her destination when it sold her the ticket and accepted her as a passenger. Although she changed busses at Jacksonville, Florida, her trip was a continuous journey from Florida through Georgia and into South Carolina, and the motor carrier—operating wholly within the State of Florida, but connecting with another line at Jacksonville—was one of the agencies employed in the interstate transportation. The conclusion is inescapable that the plaintiff was a passenger in interstate commerce, and the Florida statutes relating to motor carriers within that State can not be applied to the transaction. In the late case of Rogers *v.* Atlantic Greyhound Corp., 50 Fed. Supp. 662, it appears that the plaintiff, a resident of Georgia, purchased a ticket from Portsmouth, Virginia, to Wrightsville, Georgia. The defendant's bus line terminated at Augusta, Georgia, but the plaintiff had a through ticket and expected to get on another bus of a connecting line in Augusta. She was injured in South Carolina and before reaching Georgia. It was conceded that the plaintiff was an interstate passenger, on an interstate journey, and it was held that the act of Congress regulating motor common carriers of passengers controlled the rights and remedies of the passenger, and that the Georgia

Motor Carrier Act was not applicable. That case cites Grier *v.* Tri-State Transit Co., 36 Fed. Supp. 26, in which it was held that a direct-action statute of Louisiana (similar to the Florida statute) was inapplicable to a suit by a passenger traveling in interstate commerce although the injury occurred in the State of the statute invoked. The Federal Motor Carrier Act of 1935 (now known as Part II of the Interstate Commerce Act, 49 U. S. C. A., Sec. 301 et seq.) is applicable to this case. It requires a judgment against the motor carrier before a suit can be maintained against its insurer. It follows that the action in the instant case, brought directly against the insurer and before a judgment had been obtained against the motor carrier, was not maintainable. The court erred in admitting the evidence objected to and in overruling the motion for a new trial.

*Judgment reversed. Sutton, P. J., concurs.*

FELTON, J., concurring specially. This action is based on a policy of insurance written in pursuance of the laws of Florida and the rules and regulations of the Railroad Commission of Florida. It is not an action on a bond or insurance policy issued pursuant to Federal law and the rules of the Interstate Commerce Commission covering an interstate operation, and seeking to superimpose the Florida law over and upon the Federal law as to the right to sue the insurance company alone. I concur in the judgment specially, for the reason that there was no proof of the allegation in the petition which was in effect that the carrier had not obtained authority from the Interstate Commerce Commission to engage in interstate commerce by obtaining a permit and giving the required bond or otherwise qualifying under the rules of the commission. It was alleged that the carrier sold the plaintiff an interstate ticket. The presumption is, nothing else appearing, that the carrier legally sold the interstate ticket and had complied with the law. If it had not thus complied with the law, I think that the action on the policy in this case would lie against the insurance company because, in the absence of authority to engage in interstate commerce, the dealing with the plaintiff would be considered intrastate commerce.