WILLIAM DANVIR *vs.* BENJAMIN W. MORSE & another.

Suffolk.　March 10. — May 13, 1885.　W. ALLEN, COLBURN, & HOLMES, JJ., absent.

In an action by a seaman against the owner of a vessel, for injuries resulting from the failure of the master of the vessel, after the leg of the seaman was fractured, seasonably to put him ashore, where he could have proper surgical assistance, it appeared that, a few hours after the accident, the vessel was within an hour's sail of a place where such assistance could have been procured, and that the master kept him on board two days, and until the port of destination was reached. The judge refused to instruct the jury, as requested by the defendant, that, if the master believed that the delay in taking the seaman to the port of destination would not be serious, nor involve any serious result, the master was not in fault; and instructed them that they were to consider the condition of the plaintiff, the situation of the master, the ease with which he might reach another port, the probability of finding medical attendance, and all the other circumstances, and to determine whether the plaintiff had sustained the burden of showing that the decision of the master was otherwise than reasonable and proper. *Held*, that the defendant had no ground of exception.

A seaman's leg was fractured at sea by a cause for which the owner of the vessel was not responsible. In an action by him against such owner, for injuries resulting from the neglect of the master of the vessel in not seasonably putting him on shore, there was evidence of the following facts: After the leg was broken, the master bound it up too tightly, so that the circulation was impaired. A few hours after the injury, the vessel was within a few miles of a port, to which it could have readily gone, where surgical assistance could have been obtained, but the master proceeded to his port of destination, arriving there two days afterwards. During this time, the seaman was kept in a warm place, and no medicine or opiate was furnished him; and, on his arrival at the port of destination, erysipelas was found to have set in, the leg showed signs of improper treatment; it was swollen, and was black and smelt badly, and a splint could not be applied for four weeks. There were indications of gangrene, a discharge of pus, an abscess, and a high fever. A person usually recovers from such a fracture in eight weeks. The bones of the leg in this case were not united after nineteen months. Delay in setting and in surgical treatment causes the fractured ends of the bones so to injure the soft parts as materially to retard the healing, and lessen the chances of recovery. *Held*, that a ruling requested, that there was no evidence distinguishing the injury caused by the fracture and that by the delay in treating it, was properly refused.

In an action by a seaman against the owner of a vessel, for injuries resulting from the failure of the master of the vessel, after the seaman's leg was fractured, seasonably to put him ashore, there was evidence that, after nineteen months in hospitals, and after several operations, the bones of the leg had not united, and that, in the opinion of an expert, the man would always be lame. *Held*, that a ruling requested, that there was no evidence that the plaintiff was crippled for life, was properly refused.

DEVENS, J. The first count in the plaintiff's declaration alleged a liability of the defendants for injuries received by

the plaintiff, while in the service of their vessel; and, upon this count, a verdict was directed for the defendants. The case went to the jury upon the second count, which alleged that the plaintiff, having broken his leg in the service of the vessel, and requiring immediate medical care and treatment, the defendants had negligently failed to provide it, had kept him on board without it, and did not give him proper care and attention on board the vessel, "by reason whereof, and of said detention and delay, the plaintiff suffered extremely, and was obliged to be in a hospital and under medical and surgical treatment for eighteen months, and is crippled for life." The acts done or omitted to be done were those of the master, but it was not contended at the trial, nor at the hearing in this court, that the defendants would not be liable therefor, if a failure of duty on his part was shown.

While the plaintiff contended that it was the duty of the master, immediately after the accident, to sail to the nearest port where surgical aid could be given him, and there to land him, this instruction was refused, and the jury were instructed, that such was not the law, and that other circumstances were to be regarded "besides the mere comfort and well-being of this one person on board the ship;" that there was no absolute duty upon the master to seek the nearest port; "that his duty was to be ascertained upon consideration of the circumstances bearing on the case, and he is to decide that matter, in the exercise of a sound judgment and discretion, taking into account all the circumstances which are to govern his actions;" and "that the burden was on the plaintiff to show that the master's decision was not reasonable and proper at the time and under the circumstances," which must be shown by evidence. With great clearness, the instructions pointed out, in several forms, that all for which the plaintiff was entitled to recover, in the position in which the case was before the jury, was for the aggravation to his original injury, if any, which proceeded from the negligence of the defendants; that the jury must observe that the question was not, "as it would be in any ordinary case of personal injury, whether it was the result generally of the accident, but whether it was the result of any failure of duty of the defendants towards" the plaintiff;

and that, as the plaintiff could only recover damages for the aggravation of the original injury and the consequences flowing therefrom, it was for the plaintiff to separate and distinguish these from the original injury. The presiding judge illustrated this proposition by mentioning various aggravations of the original injury claimed by the plaintiff to have resulted from the negligence of the defendants, such as the failure of the bones of his broken leg to unite, and an abscess and a fever which followed; and he instructed the jury that they must be satisfied, by a fair preponderance of the evidence, before allowing damages therefor, "that these features of his case were due, not to his injury, nor to any general cause, but to the specific cause which he alleges in his declaration, namely, the failure of the defendants to perform their duty toward him."

These instructions, while they do not adopt the language of the defendants' requests, are, so far as they afford the general rules which are to govern the trial of the case, substantially in accordance therewith. So much of them as requested the court to rule that, if the master believed, though there would be delay in carrying the plaintiff to the port of destination, it would not be a serious delay, nor involve any serious result, then the master was not in fault for deciding as he did, was properly refused. This would have left the matter to depend entirely upon the judgment of the master, if honestly exercised. Under the general instructions given, it was for the jury to consider the condition of the plaintiff, the situation of the master, the ease with which he might reach another port, the probability of finding medical attendance, and all other circumstances, and to determine whether the plaintiff had sustained the burden of showing that the decision of the master was otherwise than reasonable and proper, which was the true rule.

Nor was it the duty of the judge to select particular features of the plaintiff's condition, as described, and rule that there was no evidence that these were not caused by improper treatment. Having given to the jury a clear and intelligible rule, to attempt thus to break the evidence into parts would obviously tend to diminish the effect, which, as a whole, it should properly bear. It was by all the evidence in the case, and not

by its separate and individual portions, that it was to be decided whether and to what extent there was aggravation of the plaintiff's injuries by the delay to afford him surgical assistance, or by improper treatment of him.

That there was such aggravation thereby, the jury must have found, and the evidence of it appears to have been ample. Briefly to recapitulate it, if believed, — and some of it, it should be said, was controverted, — it was shown that the accident happened soon after one o'clock in the morning of August 17, 1881, when the vessel was not far from the entrance to Chesapeake Bay; that, about three hours later, the vessel passed within six or seven miles of Fortress Monroe, and was then one hundred and sixty or one hundred and seventy miles from Washington, her port of destination; that there was a fair wind for Fortress Monroe or Norfolk; that the plaintiff was taken to Washington, where the vessel arrived on the morning of August 19, and the plaintiff was taken to a hospital there about noon on that day; that the captain was urged to carry him to Fortress Monroe or put him on board a river boat; that the captain passed it by, determined not to lose his run, although he knew there were doctors and hospital there or at Norfolk; that he used upon the plaintiff bandages and splints which were too tight; that they were not loosened, although the plaintiff urged it; that, on their removal, it was found that the circulation of the leg had been much impaired, that erysipelas had set in, and the bones of the leg could not be adjusted; that the leg showed signs of improper treatment; that it was indented and strangulated, and appeared as if a hard substance had been bound into it; that it was swollen, and was black up to the thigh; that it smelt badly; that the bandages were cut off in a single piece; and that a splint could not be applied for four weeks.

It was further testified, that the master was brutal in his language to the plaintiff, who was kept in a small room where the heat was very great; that his leg was not bathed or washed, nor was any medicine or opiate administered to him. There was evidence that such an injury required treatment at the earliest possible moment; that, after the arrival of the plaintiff in Washington, there were indications of gangrene, a discharge of foul pus, an abscess, and high fever, accompanied by such a

suppuration from his leg as caused his death to be expected by his physicians. There was, in addition, evidence that the usual recovery from such a fracture might be, under favorable circumstances, in eight weeks; that after nineteen months in hospitals, the plaintiff's leg has never united; that non-union of the limb is very unusual; that delay in setting and in surgical treatment causes the fractured ends of the bones so to injure the soft parts as materially to retard the healing; that it will hazard the limb of the patient; and that it will, if long continued, cause death of the parts affected, and will materially lessen the chances of recovery.

It is not easy to understand how it can fairly be contended that there is not here evidence upon which the jury might have found that the plaintiff should have been put on shore at Fortress Monroe; that great pain and suffering were caused by delay in his surgical treatment, and by the treatment to which he was subjected, and material injury done him thereby; and that the conduct of the master under the circumstances was not reasonable and proper.

The defendants contend that the case does not show any separating and distinguishing evidence whatever by which it can be determined how much damage was occasioned by the injury, and how much by any aggravation thereof by delay or other neglect. It is true that how much was occasioned by the original injury, and how much by the aggravation of it, cannot be ascertained with mathematical accuracy. An injury from such a wound is always followed by fever; but if a jury is fully satisfied that, by being kept in a place of intense heat, without bathing, and assailed by harsh language, the fever is aggravated, it is not a tenable proposition that the plaintiff is to receive no damages therefor, if there is a duty on the party so treating properly to care for him, because the exact amount of additional suffering cannot be determined with entire precision, but must be ascertained by a calm and judicious weighing of all the facts.

The defendants are certainly protected when the jury are instructed that all for which they can award damages must be shown by a preponderance of evidence to have proceeded, not from the original injury, but from the wrongful acts of the defendants subsequently, whether of omission or commission; and,

upon the evidence which we have briefly recapitulated, it cannot be said that the jury were without the means of separating and distinguishing much of the pain, suffering, and danger of non-recovery which proceeded from aggravation, from that which immediately proceeded from the injury itself. As to that pain, suffering, and danger of which the cause was left doubtful, the instruction allowed no damages to be awarded.

To instruct the jury, which the defendants strongly insist should have been done, that there was no evidence that the plaintiff was crippled for life, was to select, as we have before suggested, but a single piece of evidence for the judge to instruct upon, which he was not required to do, when full and clear general instructions had been given. If given, it would certainly have been incorrect. When it was in evidence from Dr. Hamilton, that, after more than nineteen months in the hospital and several operations for the purpose which proved wholly unsuccessful, the bones had never united, that in the opinion of the witness the plaintiff would always be lame, and that it was self-evident that delay would aggravate the injury, add to the pain, and diminish the chance of recovery, no instruction such as the defendants requested on this point was possible.                              *Exceptions overruled.*

*F. Dodge*, for the defendants.

*W. E. Russell*, (*C. T. Russell, Jr.*, with him,) for the plaintiff.