KATE McGIVERN, administratrix, *vs.* THOMAS WILSON'S SONS AND COMPANY & another.

Suffolk.    November 20, 21, 1893. — January 5, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Practice — Filing of Jury Claim — " At issue " — Rule of Superior Court — Personal Injuries — Inference of Negligence.*

If, after the writ in an action is entered, the plaintiff dies, and the defendant suggests the death on the record and files his answer, and the administrator of the plaintiff's estate, who is not appointed until a year after his death, is, upon his motion made within two weeks after his appointment, admitted to prosecute the action, the parties are then "at issue," within Pub. Sts. c. 167, § 69, and the ten days prescribed by Rule 22 of the Superior Court for filing a claim for trial by jury begin to run from that time.

By the contract between a shipowner and a stevedore, the former furnished the appliances for discharging the cargo, and it was the duty of the officers and crew of the ship to rig the boom, fall, and guys used for that purpose, and deliver the gear for discharging completely rigged to the stevedore, who had charge of it while discharging; and it was delivered properly rigged when the stevedore

began discharging. Between the times when the stevedore was using the gear, the officers and crew had the right to, and often did, use it for such purposes as they required ; it being understood that they would leave it in proper condition for the stevedore to go to work with in the morning. When the stevedore ceased work one evening, one of the guys was properly secured to a ringbolt in the deck, where it had been placed by the officers and crew when rigging up the gear, and which was sufficient to stand any strain to which it was liable to be put. When the stevedore began work the next morning, the guy, which in the mean time had been changed from the ringbolt to a small eyebolt in the bulwark, which was an insecure place for it, swung across the deck by reason of the eyebolt giving way, and injured a person in the stevedore's employ. In an action for his injury against the ship-owner, there was no evidence that any one was seen to change the guy from the ringbolt to the eyebolt, and the stevedore's employees denied that they did it and that they were in that vicinity ; but there was evidence tending to show that one of the officers and some of the crew were engaged on that morning before the accident in taking down a derrick, and that in doing that they undid the boom and fall where the accident occurred, and they were in the vicinity of the ringbolt and eyebolt. *Held*, that the relative situations, occupations, and duties of the officers and crew and of the stevedore were such as to warrant the inference that the change of the guy was made by the officers and crew ; and that it was not a matter of mere conjecture that they changed it.

TORT, by the administratrix of the estate of George McGivern, for personal injuries occasioned to her intestate, while employed by stevedores upon a steamship owned by the defendants. At the trial in the Superior Court, before *Richardson*, J., the jury returned a verdict for the plaintiff; and the defendants alleged exceptions, which appear in the opinion.

*C. T. Russell, Jr. & A. H. Russell*, for the defendants.

*S. L. Whipple*, (*G. A. Saltmarsh* with him,) for the plaintiff.

MORTON, J. There are two bills of exceptions in this case. The first relates to the right of the plaintiff to a jury trial. It appears that after the plaintiff's intestate was injured he brought this action against the defendants. The writ was returnable in September, 1891, and was duly entered. The plaintiff's intestate died on September 15, after the entry of the writ. On October 5 the defendants suggested the death on the record, and at the same time filed an answer. Nothing more was done till September 24, 1892, when the present administratrix, who had been appointed on September 10, 1892, moved that she be admitted to prosecute the action, and the motion was granted. On the same day she was allowed, against the objection of the defendants, to file a claim for trial by jury, and the court ruled that she was entitled to file the same as matter of right, that it was seasonably

filed, and that she was entitled thereupon as of right to a trial by jury. The defendants excepted to these rulings.

It is provided alternatively by the Public Statutes, that a party desiring a trial by jury shall give notice thereof "before the parties are at issue, or within such time thereafter as the court may by general or special order direct." Pub. Sts. c. 167, § 69. The rule of the Superior Court requires that the notice thus provided for "shall be filed not later than ten days after the filing of the answer or plea, unless the court shall by special order restrict or extend the time." Superior Court Rule 22. This rule obviously means the filing of such an answer or plea as puts the parties at issue. "The parties" cannot be said to be at issue when only one is before the court. The answer having been filed, the parties were at issue in this case as soon as the administratrix was admitted to prosecute the action, and the ten days began to run from that time. The rulings of the court were therefore right.

The question presented by the other bill of exceptions is, in substance, whether there was any evidence that warranted the jury in finding that the accident was due to the negligence of the officers and crew of the steamship. It appeared that the defendants under their contract with the stevedores furnished the appliances for discharging, and that it was the duty of the officers and crew to rig the boom, fall, and guys used for that purpose, and deliver the gear for discharging, completely rigged, to the stevedores who had charge of it while discharging. Between the times when the stevedores were using it, the officers and crew had the right to use the appliances for such purposes as they might require, and often did use them at noon, or at night, or in the morning before the stevedores began work. The supposition was that the gear would be all right every morning for the stevedores to go to work with, and it was the business of the officers and crew to leave it so if they used it. There was evidence tending to show that the boom, fall, and guys were properly rigged when the stevedores began discharging, which was two or three days before the accident, and that the guy which caused the injury was, on the evening before the accident, when the stevedores ceased work, properly secured to a ringbolt in the deck where it had been fastened by the officers and crew when

rigging up the gear, and which was admitted to be sufficient to stand any strain to which it was liable to be put. Between the time when the stevedores ceased work on the evening before the accident and the time of the accident, which was shortly after seven o'clock on the next morning, the guy was changed from the ringbolt to a small eyebolt in the bulwark, an admittedly insecure place for it, and upon the fall being attached to a gang plank on the wharf for the purpose of hauling it upon the vessel, which was the first thing the stevedores did that morning, the eyebolt gave way, and the guy swung across the deck, striking the plaintiff's intestate in the back of the head, and causing the injury complained of. There was no evidence that any one was seen to change the guy from the ringbolt in the deck to the eyebolt in the bulwark. One Malloy, who had charge of the appliances while discharging, testified in substance, among other things, that he did not change the guy from the ringbolt to the eyebolt, and that none of the gang of stevedores did, so far as he knew; that he did not see any of them in the vicinity of the ringbolt or eyebolt, and it would be none of their duty to change the guy, and that he saw nobody in the gang who could have done it except a man by the name of Connaughton. Connaughton was called, and testified that he did not move it, and that he did not know of any one else of the gang of stevedores being over there by the ringbolt or eyebolt in the morning before the accident occurred. On the other hand, there was evidence tending to show that one of the officers and some of the crew were engaged on that morning before the accident in taking down a derrick, and that in taking it down they undid the boom and fall where the accident occurred, and that they were along there by the ringbolt and eyebolt. "They did not have to interfere with the guys at all unless they wanted to shift them out of the way in taking down the boom, because they might be in the way in taking down the derrick." It did not appear directly that they interfered with the guys; but in view of the relative situations, occupations, and duties of the officers and crew, and of the stevedores, we think the inference was a fairly possible one that the change of the guy was made by the officers and crew, and that it was not a matter of mere conjecture that they changed it. It may be said that the stevedores themselves should have discovered the

change. But the guy was properly fastened when they stopped work the night before, and it was understood that, if the officers and crew used it, they would leave it properly secured to the ring-bolt. How far the stevedores were justified in relying on these considerations was a question for the jury under suitable instructions, which it must be assumed were given.

*Exceptions overruled.*