## THE IDA B. COTHELL.

### COTHELL v. LAMB.

*(Circuit Court of Appeals, Fifth Circuit. May 1, 1894.)*

#### No. 213.

SHIPPING—PERSONAL INJURIES—NEGLIGENCE.

While a small stern-wheel steamer was towing a large raft up a river against a strong current, two of her crew, for the purpose of making fast to the bank, attempted to take ashore the end of a line coiled on her deck, but, failing to reach the point intended, dropped it in the river, and took the other end of the same line from under the coil, whereupon the fireman went to pass them the line. The end of line which had been dropped into the river had been caught in the wheel, which was moving only enough to keep the boat in her place; and the fireman was injured by that part of the line getting around his foot. The vessel had on board a master, two engineers, a deck hand, fireman, and a boy. *Held,* that no fault was shown in the vessel, her appliances, equipment, or officers, tending to cause the injury.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel by Lamb against the steamer Ida B. Cothell for personal injuries. The district court rendered a decree for libelant. Claimant appealed.

This was an appeal from a decree of the district court of the eastern district of Louisiana for personal injuries. It appears from the testimony in the case that the libelant, appellee herein, was serving upon appellant's steamer, the Ida B. Cothell, during the month of July, 1892, in the capacity of a fireman. The steamer, which was a flat-bottom, square-bow, stern-wheel river boat of about 57 tons' burden, had at the time a raft, which she was attempting to tow up Old river against a strong current, making about a mile and a half per hour. The master, determining to make fast to the bank until the next day, sent two men to examine the strength of a tree standing upon the bank some distance ahead. Finding it sufficient, upon their return they took the end of a large line which they had brought from the raft, and which was lying coiled upon the steamer's deck, and attempted to take it ashore, but, not being able to reach the point intended, they gave up the attempt, and dropped the line into the river, and returned for the other end, which was under the coil still remaining on the deck, when libelant went to assist in turning the coil over, and was aiding in paying it out. In the meantime the end of the line which had been thrown into the river became entangled in the wheel of the steamer, and, upon libelant's attempting to pay out the rope from the coil lying upon the deck, the part of the rope the end of which had been thrown into the river got around his foot, and he was drawn overboard over the bow of the vessel, and by this means the foot and ankle were broken and torn off. As soon as the outcry was made, the engineer stopped the motion of the vessel, and he was taken from the water, and,

as soon as the steamer could make the raft, which she was towing, fast to the bank, the master took the injured man to the nearest place where a surgeon could be employed, where the foot was amputated. He was then sent by the first conveyance to the Marine Hospital at New Orleans. Subsequently, after having been nearly two months in the hospital, he sent word to Capt. Cothell to come to see him, which he did, and an attempt was made at a compromise of his demand against the steamer. Capt. Cothell gave him $100, and agreed to provide him with a cork leg. He also gave Lamb, at different times, several small amounts of money, of which Lamb was shown to be in need. At the time of the payment of the $100 by Capt. Cothell to Lamb a written agreement was entered into, in which the libelant waived all claims for damages against the steamboat and against the captain, Robert Cothell. This agreement was made in writing, and presented at the trial of the case. Capt. Cothell also deposited $50 for the payment of a cork leg which he agreed to give him. Subsequently Lamb, being in need, applied for money in place of the cork leg which had been promised him, and, believing that he could never wear it, accepted $20 of the $50 which had been deposited for that purpose. Upon the case being heard in the district court, the district judge apparently considered that the party was bound by his promise and agreement, and gave a decree for $30, the amount which had been deposited for the payment of the artificial leg, less the $20 which had been paid to Lamb. Upon a subsequent rehearing it was considered that the steamer was in fault for the injury suffered by libelant, and a decree for $1,000 was given in his favor. From this decree an appeal has been taken on behalf of the vessel by her owner, and a counter appeal allowed, without bond by the libelant, upon his affidavit of his poverty, he praying a larger decree.

J. R. Beckwith, for appellant.

O. B. Sansum, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge. The only allegation contained in the pleadings of the libelant by which it is claimed that the steamer is liable, or charging any fault upon the steamer or any of her officers, is that "the engineer of said steamer, not regarding the danger to which libelant would be subjected by moving said steamer ahead, negligently and carelessly set the steamer in motion, and in consequence thereof said steamer ran ahead, and caused said coil of rope to run off very rapidly, and in consequence of that negligence and carelessness the right foot of the libelant became entangled in one of the coils of said rope." It is not averred that the vessel was not properly manned or equipped, or that libelant was ordered by the master to any extrahazardous position or service, although, upon the hearing of the appeal in this court, it is contended that the master of the steamer was negligent, careless, and indifferent, giving improper orders, and recklessly disregarding the fact that the line which had been thrown into the river had been caught in the wheel of the steamer, and was, at the time they were paying out the second line, in the act of being drawn around it; and that the vessel was responsible for the total damage, and that the amount given was very much less than the circumstances of the case justly demanded and required. In behalf of the appellant, the claimant of the vessel, it is contended: First, that the action in rem for an injury suffered on board a vessel by any carelessness or negligence of any person on board, and not relating to

the furnishing, appliances, or equipments of the vessel, or of the manner in which the vessel herself was being handled, should not be sustained; that, if any action would lie on behalf of the libelant for injuries sustained by him, it would be in personam against the owner or master, and not against the steamer; that the engineer —the only one charged with any negligence or fault—was a co-servant with libelant; that the facts and circumstances of this case show conclusively that there was no negligence on the part of any of the officers of the vessel which would render her or her owners liable or responsible for any injuries suffered; that the damage suffered by the libelant was the result of his own negligence or carelessness, or the negligence and carelessness of his fellow servants, for which the vessel cannot be made liable.

We will consider these points in an inverse order from herein stated, and a decision in favor of appellant upon any one of them will determine the case. There has been much conflicting testimony in this case, but the material points may be clearly determined. In reviewing the entire facts of the case, notwithstanding the absence of allegations of fault except in one particular, we consider it immaterial whether or not the line was first being taken out by the order of the master or against it, as he states it was, for if this was the cause of the disaster which subsequently occurred, it was too remote to influence this case. If there was any negligence in permitting the line to drop into the river, it must have been the carelessness or negligence of the men in the skiff who attempted to take it ashore, and, finding it insufficient, let it go, as they testified, and could in no way make the vessel liable. The master testifies that he found the libelant at the coil of the rope when he came from the pilot house, and blamed him for meddling with it, but went to help him about uncoiling and paying it out, as it was necessary that something should be done then. The allegation is that the engineer carelessly and negligently set the steamer in motion, but the testimony shows that the engine had been continually going. The only signal bell which the engineer had received had been the slow bell, when she came to the bank, to slow down and keep the wheel moving just enough to keep her against it until the lines were taken out and she made fast. The steamer was headed up stream against a strong current, with a large raft immediately astern, with no line out; and not to have kept the wheel moving forward, so as to have kept her in her place, would have been reckless and improper. Up to that time no one knew or could have known by reasonable diligence and care that the rope had been caught in the wheel; and it appears that at the first intimation that such was the case the engineer immediately stopped and backed.

It has been urged in argument in behalf of the libelant that the steamer was insufficiently manned; that had there been ample crew the master could have remained in the pilot house where he could have signaled the engineer to have backed the steamer upon discovery that Lamb was caught in the coils of the rope; but we fail to find any insufficiency in the crew which in any way

affects the facts of the case herein. There appears to have been on board the vessel the master, two engineers, a white deck hand or line man, a fireman, and a colored boy. There has been no evidence given either in favor of or against the sufficiency of such a crew, and, in the absence of such evidence, we cannot find that it was insufficient, but, upon the contrary, considering the service in which the steamer was employed, that she was engaged in river navigation, able at any time to make fast to the bank in case of an emergency, believe that it was ample. The master appears to have acted with judgment and discretion in all matters, as far as the evidence shows. It does not appear that, had he been in the pilot house at the time of the disaster, the wheel of the steamer could have been stopped any sooner, or the accident prevented. We can but consider that the cause of the disaster was the negligence of the libelant himself, who, while turning over the coil of the rope, and attempting to pay out the end, unthinkingly and carelessly stepped within the loose coils as they were lying upon deck. Any other view would be utterly inconsistent with the positively proven circumstances. That the coil of the rope could in any way have "ran around" the ankle or the leg does not appear from the evidence, and we consider it impossible.

There is an uncertainty arising from the testimony in regard to the manner in which the libelant was called upon to pass the line to the boat. It was true he had shipped as a fireman, and that was his duty. He says that he was directed by the engineer to leave his fire, and to pass the men the end of the line. But this the engineer positively denies. The master also denies that he gave him any orders for passing out the line, and says that he rebuked him severely for meddling with it, and states that the reply he made was that the men in the boat wanted it. Considering the testimony most favorably for appellee, we fail to find that any fault in the vessel, her appliances, equipment, or officers tended to produce the injury of appellee, and this will preclude the necessity of examining and deciding the further defenses urged by appellant in regard to the impropriety of the action in rem, the relation of the master and engineer as fellow servants of the libelant, or the force or effect of the compromise. It will necessarily follow that the decree of the court below be reversed, and the case remanded to the court below, with instructions to dismiss the libel; and it is so ordered.