## MANSARD JOHNSON *vs.* EDWARD L. HOLMES.

Suffolk.    November 10, 1898. — June 1, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Seaman — Master and Servant — Negligence — Action.*

In an action against the master of a vessel by a seaman, whose hand was frozen while pounding ice from the rigging, as ordered by the master during a wintry gale, upon the ground that his injury was aggravated by the master's neglect to furnish proper treatment, it appearing that, when the seaman came from the rigging, the steward put his hand in a pail of cold water and afterwards applied a potato dressing to the hand, the facts that the usual method of treating a frozen hand, as testified to by a physician, was not followed by the master, who warned the men not to go near the fire if at all frost-bitten, and that no oil was put on the hand, although there was castor oil on board the vessel, do not show negligence on the part of the master.

TORT, in two counts, for personal injuries sustained by the plaintiff, and for the aggravation of the injury, through the alleged negligence of the defendant. At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict for the

defendant on the first count, and for the plaintiff on the second count; and the defendant alleged exceptions. The facts appear in the opinion.

*E. P. Carver*, for the defendant.

*J. M. Browne*, for the plaintiff.

LATHROP, J. The plaintiff was a seaman on board a vessel of which the defendant was master, on a voyage from Baltimore to New Bedford. On Sunday night, February 19, 1893, the vessel came to anchor, in a heavy gale of wind, off Barnegat, New Jersey. Before coming to anchor she had lost and split more or less of her sails, and by reason of the weather being intensely cold the vessel became badly iced up. On the morning of the 20th it became necessary to clear the ice off, and the master ordered the crew to pound the ice from the vessel and the rigging. While in the rigging the plaintiff had his hand frozen, as he alleged, because the captain refused to let him come down and warm himself. This is the subject matter of the first count, and, as the jury found for the defendant on this count, it is stated only as showing the foundation of the second count, which is for the aggravation of the injury. This count proceeds upon the theory that it was the duty of the defendant to furnish the plaintiff with medical and surgical treatment at once, while it was not furnished for a long time, namely for five days; that the plaintiff was wrongfully compelled to remain aboard the vessel, and to perform duty while in a disabled condition.

During the rest of the voyage, which lasted until Thursday morning, when the vessel reached New Bedford, the plaintiff was called on at times for duty. On his arrival at New Bedford, he was sent to Boston to the hospital, where two of his fingers were amputated.

It is not contended by the plaintiff's counsel in argument that it was the duty of the defendant to have put into some intermediate port, and there is no evidence in the case that anything would have been gained by so doing. Indeed, we should be slow to hold that it was the duty of a master of a vessel engaged in the coasting trade to put into an intermediate port whenever a seaman should be frost-bitten.

The argument of the plaintiff's counsel rests upon the theory that no proper treatment was afforded the plaintiff after the

hand was frozen.   On this point the plaintiff testified that when he came down from the rigging the steward got a pail, filled it with cold water, and put his hand in it; and that that night he scraped or grated a potato, and put it on his hand.   There is no evidence that the application of the potato dressing was beneficial or otherwise.

There was evidence from a physician, who saw the plaintiff on the train going to Boston, that the usual plan of treatment for a frozen hand is to bathe it very gently in ice-cold water in a cold room; that snow is sometimes used with very gentle friction; then a stimulant is given internally, something to increase the action of the heart and secure a stronger circulation of the blood to the affected part; then, after the space of a few hours, a little higher temperature, and gradually bringing the part into contact with ordinary temperature.   It is evident, however, that while a master is bound to use reasonable care in treating a seaman who is injured while in the discharge of his duty, he is not bound to have all the education of a physician, or to have the ship so fitted up that an injury can be treated with all the care and attention that it would receive on land.   The principal thing that is required, where an injury is occasioned by frost, is to draw out the frost by placing the part injured in cold water.   This was done in this case; and we do not think that the master, in a gale of wind, with all of his crew more or less injured by frost-bites, as in this case, was bound to know that a stimulant was necessary, or to see that, after cold water was applied, the plaintiff went into a little higher temperature after a few hours, and that his hand was gradually brought into ordinary temperature.   It does appear from the evidence of the master that the men were warned not to go near the fire if at all frost-bitten; and this evidence was not contradicted.

Some stress is laid by the counsel for the plaintiff on the fact that no oil was put on the hand, and that there was castor oil on board the vessel.   The only foundation for this argument is the testimony of the physician who treated the hand on the train. He testified that he then used an oil upon the hand to soothe the pain.   In answer to the question, " Is that proper treatment in the case of frost-bites? " the witness answered, " Yes, sir, at that time.   The injury had been done, it was evident, some

little time before. Of course, the frost was then out of the hand, and the injury had been done. It was impossible to restore the parts. It was simply a matter of relieving his suffering, and having an amputation to avoid further sloughing of the parts."

We are of opinion that this evidence does not show negligence on the part of the master. In the first place it does not appear that the application would have had any effect in curing the frost-bite or in preventing the injury which resulted. In the next place there is no evidence that the application of oil to a frost-bite was known to the master, or was so commonly in use for such a purpose that the master should have known of it.

On all the evidence in the case, we are of opinion that the plaintiff has not sustained the burden of proof that the master was guilty of negligence which aggravated the injury for which the jury have found that the master was not to blame.

*Exceptions sustained.*