## EDWARD J. PROCTOR *vs.* MICHAEL J. DILLON.

Suffolk. March 18, 1920. — May 17, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Jurisdiction. Admiralty. Negligence,* Employer's liability. *Ship. Practice, Civil,* Ordering verdict. *Pleading, Civil,* Declaration. *Words,* "Indemnity," "Compensation," "Damages."

If a motion by the defendant, at the close of all the evidence at the trial of an action at law, that a verdict be ordered in his favor is denied by the judge without asking the defendant to point out more particularly the propositions of law upon which he relies, and the defendant alleges an exception, it is open to the defendant in this court to raise any question of law actually involved.

One employed on a ship as ship's cook and seaman, who receives personal injuries when boarding his ship in tidewater by reason of the breaking of a defective ratline, which properly was being used by him and which should have been kept in a safe condition by the owner of the ship, may recover damages for his injuries in an action of tort at common law against the owner of the vessel in the Superior Court, such right being reserved by the provisions of 36 U. S. Sts. at Large, 1091, 1161, saving "to suitors in all cases," from the exclusive jurisdiction of all "causes of admiralty and maritime jurisdiction" vested in the federal courts, "the right of a common law remedy where the common law is competent to give it."

In the action above described, it was *held,* that the plaintiff was entitled to recover full compensatory damages.

A declaration in an action of tort by one employed as ship's cook and seaman against the owner of the ship, which alleged that the owner owed to him as a member of the crew the duty to keep and maintain the ship and her rigging, furnishings and appurtenances in a safe condition and that "by reason of the negligence" of the defendant a ratline had become defective, weakened and unsafe, whereby the plaintiff suffered injuries while the ship was lying alongside a wharf or pier in tidewater, plainly describes a maritime tort and sets out a cause of action entitling the plaintiff to "indemnity" for his injuries. Following *The Osceola,* 189 U. S. 158, 175.

The allegation in the declaration above described that the condition of the ratline arose "by reason of the negligence" of the defendant, and an instruction to the jury at the trial which required the plaintiff, in order to recover, to prove negligence of the defendant with respect to the ratline, were not harmful to the defendant, whether the basis of recovery for the maritime tort was that the owner was an insurer of the fit condition of the proper appliances appurtenant to the ship, or that he was guilty of such a failure to perform his duty as constituted negligence on his part.

It *seems,* that, according to the practice of the admiralty courts, the right of recovery by the seaman under the circumstances above described rests upon proof of negligence of the owner.

If a member of the crew of a ship, which belongs to two owners and is managed by only one of them, receives personal injuries while in tidal waters by reason of a defective condition of a ratline which it was the duty of the owners to keep in a fit condition, he may recover full compensatory damages in an action against the managing owner only.

TORT by a member of the crew of the fishing schooner *Florida* against one alleged in the declaration to be "the owner" of the schooner, for personal injuries resulting from a fall on November 5, 1912, caused by the breaking of a ratline which had been allowed to become defective through alleged "negligence" of the defendant. Writ dated September 26, 1916.

In the Superior Court, the action was tried before *Fessenden*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered for him. The motion was denied. He then asked for the following, among other rulings:

"2. If there was any duty imposed by law or otherwise upon the owners of the schooner Florida, such duty was imposed to the extent of their ownership upon all the owners, so that whatever duty was thus owed was owed by both Michael J. Dillon and Edward A. Proctor, the other part owner of the schooner."

"6. The plaintiff may not pick out one of two co-owners of a boat and impose upon him liability without at the same time suing the other co-owner.

"7. The agent of the owners of a boat merely as agent cannot be responsible to the crew of such vessel. If any duty exists, it is a duty of the owners themselves."

The judge refused to make the rulings. The jury found for the plaintiff in the sum of $2,000; and the defendant alleged exceptions.

*E. C. Stone,* for the defendant, submitted a brief.

*S. R. Jones,* for the plaintiff.

RUGG, C. J. This is an action of tort at common law wherein the plaintiff seeks to recover damages for personal injuries sustained by him on November 5, 1912, while boarding the Florida, a fishing schooner lying in tidewater at a wharf in Gloucester. The schooner was at the time fitted out, and was ready to put to sea the next morning on a fishing voyage. The plaintiff was cook and seaman, had put his clothes aboard, and was under the direc-

tion of the master or captain. In going from the wharf to the vessel a little after nine o'clock in the evening when the tide was well down, the plaintiff caught hold of the rigging and stepped on the ratline, which broke causing him to fall and receive injuries. This ratline, a cross piece of rope corresponding to the rung of a ladder, was the first one under the lantern board in the fore rigging on the starboard side. When the vessel was on a fishing voyage the ratlines were used by members of the crew to go aloft looking for swordfish.

There was evidence tending to show that it was the usual method of boarding the ship to step upon the ratline, that this part of the Florida was weak and "all dry rot," a condition which might have been discovered by proper inspection, and that it was the duty of the defendant as managing owner of the vessel to make such inspection and keep the vessel in repair and in seaworthy condition.

The contention chiefly urged by the defendant now is that, since the vessel was in navigable waters and the plaintiff one of her crew, the rights and liabilities of the parties are those es-tablished by the law of the sea and must be determined wholly according to the principles of admiralty and not at all by those of the common law, and that the plaintiff is not entitled to re-cover in this action, and that the judge erred in refusing to order a verdict for the defendant.

1. This point does not appear to have been specifically pre-sented at the trial in the Superior Court. There was, however, a general request by the defendant that a verdict be ordered in his favor. Upon the refusal of such a request, "if the judge does not ask the requesting counsel to point out more particularly the propositions of law upon which he relies, it is possible to raise in this court any question of law actually involved," even though it was not referred to nor thought of by the judge or counsel at the trial. *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 190. *O'Donnell* v. *North Attleborough,* 212 Mass. 243, 245. *Noyes* v. *Caldwell,* 216 Mass. 525, 527. Conversely, the ruling of the Su-perior Court will be sustained if sound even though the judge in making it may have stated or been moved by reasons erroneous in law. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 384. *Putnam* v. *United States Trust Co.* 223 Mass. 199, 203.

2. Plainly the case at bar relates to a maritime tort. It arose upon a seagoing vessel in navigable waters. In *The Plymouth*, 3 Wall. 20, at page 36, are found these words, quoted with approval in *Atlantic Transport Co. of West Virginia* v. *Imbrovek*, 234 U. S. 52, at page 60: "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." *Peters* v. *Veasey*, 251 U. S. 121.

3. It is provided in the Constitution of the United States by art. 3, § 2, that "The judicial power shall extend to all cases . . . of admiralty and maritime jurisdiction," and by art. 1, § 8, that "The Congress shall have power . . . to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States." Pursuant to this jurisdiction and authority it was enacted by the Judicial Code, act of March 3, 1911, c. 231, § 24, cl. 3, and § 256, cl. 3; 36 U. S. Sts. at Large, 1091, 1161, in force at the time of the injury to the plaintiff, that exclusive jurisdiction is vested in the courts of the United States of all "causes of admiralty and maritime jurisdiction; saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." See now 40 U. S. Sts. at Large, 395, of the acts of Congress, approved October 6, 1917.

4. The Constitution of the United States and an act of Congress being involved in the determination of this question, decisions of the Supreme Court of the United States are of binding force. Numerous cases have been decided by that court which are pertinent to the facts in the case at bar. It was said in *Manchester* v. *Massachusetts*, 139 U. S. 240, at page 262, "Under the grant by the Constitution of judicial power to the United States in all cases of admiralty and maritime jurisdiction, and under the rightful legislation of Congress, personal suits on maritime contracts or for maritime torts can be maintained in the State courts." In the opinion in *The Hamilton*, 207 U. S. 398, at page 404, are these words by Mr. Justice Holmes: "The grant of admiralty jurisdiction, followed and construed by the Judiciary Act of 1789, 'saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it,' Rev. Sts. § 563,

cl. 8, [now Judicial Code, § 256, cl. 3,] leaves open the common law jurisdiction of the State courts over torts committed at sea. This, we believe, always has been admitted. *Martin* v. *Hunter,* 1 Wheat. 304, 337; *The Hine* v. *Trevor,* 4 Wall. 555, 571; *Leon* v. *Galceran,* 11 Wall. 185. . . . Accordingly, it has been held that a statute giving damages for death caused by a tort might be enforced in a State court, although the tort was committed at sea. *American Steamboat Co.* v. *Chase,* 16 Wall. 522." To the same point are *Sherlock* v. *Alling,* 93 U. S. 99, *The Belfast,* 7 Wall. 624, 644, 645, *Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638, 644. See *The Minnesota Rate Cases,* 230 U. S. 352, 409. It is elementary that the maritime law by itself and unaided by statute affords no remedy whatever for the death of a seaman. *The Harrisburg,* 119 U. S. 199. *The Alaska,* 130 U. S. 201. *La Bourgogne,* 210 U. S. 95. Thus the maritime law in a particular relating to substance and not to form has received by recognition and approval of the Supreme Court of the United States an important modification through the statute law of one of the States. The common law rules of liability and measure of damages appear to have been recognized and applied in actions arising at common law founded on maritime torts in *Belden* v. *Chase,* 150 U. S. 674, and *Quebec Steamship Co.* v. *Merchant,* 133 U. S. 375. See *Atlee* v. *Packet Co.* 21 Wall. 389, 395. In reliance upon these principles numerous decisions have been rendered by this court. It was held in *Kalleck* v. *Deering,* 161 Mass. 469, in an opinion written by Mr. Justice Holmes, in substance and effect that, when the relief for a maritime tort was sought in common law courts, the remedy both in its substance and its form was afforded by the common law, and that the common-law courts did not undertake to enforce the principles of admiralty law. That was an action of tort at common law to recover damages sustained by the plaintiff while on board a vessel in harbor through the breaking of a triangle on which he was sitting and scraping a mast. After deciding that upon the facts disclosed there was no remedy at common law, the contention, that a different doctrine obtained in admiralty and "that the law which would be administered by the courts especially constituted for the affairs of seamen" ought to be followed, was considered. It was disposed of in these words: "The case most relied on is *The A. Heaton,* 43 Fed. Rep. 592, followed by *The Frank & Willie,* 45 Fed. Rep. 494, and

*The Julia Fowler,* 49 Fed. Rep. 277. Compare *Morse* v. *Slue,* 1 Vent. 238; *S. C.* 3 Keb. 135, 1 Molloy de Jure Marit. book 2, c. 2, § 2. If the American cases meant that the admiralty courts had worked out the liability of the ship for the acts of the captain from their own peculiar principles, it might be necessary to inquire whether the personal liability of the owner necessarily followed from the same premises, and if it did, why the common law should yield to the admiralty rather than the admiralty to the common law. But it hardly is to be expected that different views of the substantive law should be enforced by the same judges sitting in different courts. In *The A. Heaton,* Mr. Justice Gray did not declare a doctrine peculiar to the admiralty, he merely deferred to a decision upon the common law from which he himself had dissented, which is inconsistent with the cases in this Commonwealth, and which has been explained by a later decision of the court which rendered it. *Chicago, Milwaukee & St. Paul Railway* v. *Ross,* 112 U. S. 377. See *Baltimore & Ohio Railroad* v. *Baugh,* 149 U. S. 368. Under these circumstances the Circuit Court cases do not seem to us a sufficient reason for departing from the common law because the accident happened on board ship. Moreover, it is very plain that we cannot adopt the admiralty law as a whole. We cannot divide the damages when the plaintiff has been guilty of contributory negligence, as was done in *The Julia Fowler.*" Since that decision cases have been adjudicated according to its authority either by express reference or implied recognition, and in most, if not all of them, no argument has been addressed to this court founded upon admiralty law as affording either a different standard of liability or a dissimilar measure of damages; but the principles of the common law have been applied to the determination of claims for personal injuries arising out of maritime torts. *Perkins* v. *Furness, Withy & Co.* 167 Mass. 403. *Murch* v. *Thomas Wilson's Sons & Co.* 168 Mass. 408. *Johnson* v. *Holmes,* 173 Mass. 514; *S. C.* 188 Mass. 170. *Carroll* v. *Metropolitan Coal Co.* 189 Mass. 159. *Crimmins* v. *Frederick Leyland & Co. Ltd.* 202 Mass. 17. *Souden* v. *Fore River Ship Building Co.* 223 Mass. 509. *Ford* v. *Allan Line Steamship Co. Ltd.* 227 Mass. 109. *Collins* v. *McKie Lighter Co.* 230 Mass. 281. *Kenneally* v. *Oceanic Steam Navigation Co. Ltd.* 230 Mass. 446. *Duart* v. *Simmons,* 231 Mass. 313. *Ford* v. *Trident Fisheries Co.* 232 Mass. 400. *Cambra* v. *Santos,* 233.

Mass. 131. *Morrison* v. *Commercial Tow Boat Co.* 227 Mass. 237. *Freeman* v. *United Fruit Co.* 223 Mass. 300. See *Hanley* v. *Eastern Steamship Corp.* 221 Mass. 125. In substance common law princi- ples had been followed in earlier decisions, respecting injuries or wounds received in the service of the ship or violations of duty which might be thought to be maritime torts, without discussion of the bearing of admiralty law. *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209. *Pingree* v. *Leyland,* 135 Mass. 398. *Benson* v. *Goodwin,* 147 Mass. 237. *Hayes* v. *Philadelphia & Reading Coal & Iron Co.* 150 Mass. 457. *Pierce* v. *Cunard Steamship Co.* 153 Mass. 87. *McGivern* v. *Thomas Wilson's Sons & Co.* 160 Mass. 370. See *Danvir* v. *Morse,* 139 Mass. 323. It is beyond doubt that under these principles the plaintiff is entitled to recover.

5. The contention is made by the defendant that since the decision in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, and cases following it, there is no remedy at and in accordance with the principles of common law for an injury received under the circumstances here disclosed. Especial reliance in this connec- tion is placed upon the decision in *Chelentis* v. *Luckenbach Steam- ship Co. Inc.* 247 U. S. 372. In that case the plaintiff, a fireman upon a steamship, not questioning the seaworthiness of the vessel or her appliances, and contending that he was injured while at sea through the negligence and an improvident order of a supe- rior officer, sought to recover full indemnity in a common law court. Relief was denied, the court saying at page 382: "The work about which petitioner was engaged is maritime in its nature; his employment was a maritime contract; the injuries received were likewise maritime and the parties' rights and liabilities were matters clearly within the admiralty jurisdiction. . . . And unless in some way there was imposed upon the owners a liability different from that prescribed by maritime law, petitioner could properly demand only wages, maintenance and cure. Under the doctrine approved in *Southern Pacific Co.* v. *Jensen,* no State has power to abolish the well recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law. Such a substitution would distinctly and definitely change or add to the settled maritime law; and it would be destructive of the 'uniformity and consistency at which the Constitution aimed on all subjects of a commercial character

affecting the intercourse of the States with each other or with foreign States.'" It further was said at page 383: "The precise effect of the quoted clause of the original Judiciary Act [now Judicial Code, §§ 24, 256] has not been delimited by this court and different views have been entertained concerning it." It is not necessary for us to deal with that question in the present case, nor to attempt to determine how, if at all, the defendant's contention is at variance with the express reservation "to suitors, in all cases," of the "right of a common-law remedy, where the common law is competent to give it" found in § 24, cl. 3, and in § 256, cl. 3 of the Judicial Code, nor to undertake to analyze and to reconcile the various views expressed in the decisions, to some of which reference has been made.

6. The case at bar rests upon a different footing, separate and distinct from that especially assailed by the defendant. The plaintiff is entitled to recover in this action upon another principle. It was said in *The Osceola,* 189 U. S. 158, a libel *in rem* in admiralty for damages sustained by a seaman through negligence, at page 175, "Upon a full review, however, of English and American authorities upon these questions, we think the law may be considered as settled upon the following propositions: 1. That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued. 2. That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. *Scarff* v. *Metcalf,* 107 N. Y. 211. 3. That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure. 4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident." The grounds of liability as thus stated were quoted with approval in *Chelentis* v. *Luckenbach Steamship Co. Inc.* 247 U. S. at pages 380, 381.

It is plain that the plaintiff was injured by reason of facts stated in proposition 2 above quoted, namely, the "unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." The ratline which broke was essential to the common and well recognized uses of the schooner. It was necessary for the seaman to depend upon the strength and soundness of the ratline in boarding the vessel or in debarking. The seamen of the Florida were required to use it also in the performance of their duties while at sea. The plaintiff was injured by the weakness and improper condition of the ratline. Under the principle declared in proposition 2 of the four propositions established in the Osceola and reaffirmed in the Chelentis case, the owner of the vessel is liable to the plaintiff, a seaman, for "indemnity" for his injuries. "Indemnity" in this connection is a word at least as broad in signification as is "compensation" or "damages," words commonly used in this Commonwealth to express the measure of recovery to which a plaintiff is entitled in actions of tort for personal injury through ordinary negligence. Compare *Hammond* v. *New York, New Haven, & Hartford Railroad*, 211 Mass. 549, 551, and *Sullivan* v. *Old Colony Street Railway*, 197 Mass. 512, 516.. That measure of recovery presumably was awarded under appropriate instructions in the case at bar. That is the rule of recovery under the admiralty law for a maritime tort like that here disclosed. The present is a case where the cause of action arose under admiralty jurisdiction, but it is at the same time a cause where the right of common law remedy is reserved to the plaintiff under the judicial code, because the nature of the cause of action is such that the common law is competent according to its recognized methods to give a remedy. The breach of duty involved in a failure to maintain the vessel in a seaworthy condition or to supply and keep in order proper appliances appurtenant to the vessel does not differ in its essential characteristics from other breaches of duty which are commonly the subject of trial and adjudication in common law tribunals. The ascertainment of damages, or compensation or indemnity for personal injuries caused by breach of legal duty is the every day work of a common law court. It was said in *Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638, 648, "if the suit be *in personam* against an individual defendant, with an auxiliary attachment

against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the saving clause of the statute . . . of a common law remedy." These words were quoted with approval in *Chelentis* v. *Luckenbach Steamship Co. Inc.* 247 U. S. 372, at page 384. The case at bar appears to us to fall precisely within these words. The point also appears to us to be covered by other decisions, the authority of which has not been impaired by *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, and *Chelentis* v. *Luckenbach Steamship Co. Inc.* 247 U. S. 372.· *Martin* v. *Hunter*, 1 Wheat. 304, 337. *The Hine* v. *Trevor*, 4 Wall. 555, 571. *Leon* v. *Galceran*, 11 Wall. 185. *Manchester* v. *Massachusetts*, 139 U. S. 240, 262. *Workman* v. *New York*, 179 N. Y. 552. ·*Sherlock* v. *Alling*, 93 U. S. 99. See, also, in this connection, *Cornell Steamboat Co.* v. *Fallon*, 102 C. C. A. 345; 179 Fed. Rep. 293; *Thompson Towing & Wrecking Association* v. *McGregor*, 124 C. C. A. 479; 207 Fed. Rep. 209; *Scarff* v. *Metcalf*, 107 N. Y. 211; *Larson* v.· *Alaska Steamship Co.* 96 Wash. 665.

7. The plaintiff's declaration sets out that he was one of the crew of the Florida, that to him the defendant as owner owed the duty to keep and maintain the schooner and her rigging, furnishings and appurtenances in a safe condition and that "by reason of the negligence" of the defendant the ratline had become decayed, weakened and unsafe, whereby the plaintiff suffered injuries while the Florida was lying alongside a wharf or pier in the port of Gloucester. This declaration plainly describes a maritime tort. It sets out a cause of action under proposition 2 of the opinion in *The Osceola*, 189 U. S. 158, 175, already quoted. If, as the defendant contends, he is not liable for negligence under the maritime law, that part of the declaration may be rejected as surplusage. If, however, the maritime law does not make the defendant liable as insurer of the good order of the proper appliances appurtenant to the ship, then the allegation of breach of duty amounting to negligence was necessary. Moreover, the defect in the declaration, if any, was apparent on its face and advantage should have been taken of it by demurrer. In any event the defendant has suffered no harm in this particular.

8. For the same reasons the defendant suffered no harm by reason of that portion of the charge which required the plaintiff

to prove negligence of the defendant in respect to the condition of the ratline. The defendant has no ground for complaint if the plaintiff was required to produce a higher degree of proof than the maritime law required. The right of recovery by a seaman for injuries arising under circumstances like those here disclosed appears to us to rest upon proof of negligence of the owner according to the practice of admiralty courts. It was said in substance and effect in *The Joseph B. Thomas*, 30 C. C. A. 333, at page 335, that the "pith and substance of all the decisions upon this subject, as expressed in a great variety of cases each having reference to the special facts and surroundings of the evidence," is that the duty of the owner to the seaman is "to exercise ordinary and due diligence and care in keeping" the ship safe against injury or danger in those respects as to which duty in that particular is owed to the seaman. This statement is supported by ample citation of authorities. *Leathers* v. *Blessing*, 105 U. S. 626, 629. *The France*, 8 C. C. A. 185. *Cothell* v. *Lamb*, 10 C. C. A. 634. *The Henry B. Fiske*, 141 Fed. Rep. 188, 190. *The Lyndhurst*, 149 Fed. Rep. 900. *Couch* v. *Steel*, 3 El. & Bl. 402, 407. *Smith* v. *Cook*, 164 Fed. Rep. 628. The owners of the ship owed the duty to the plaintiff "to supply and keep in order the proper appliances appurtenant to the ship." *The Osceola*, 189 U. S. at page 175. Negligence simply consists in doing or omitting to do an act in violation of a legal duty. *Bernabeo* v. *Kaulback*, 226 Mass. 128, 131. It seems to us that the instructions as to negligence were appropriate. The case upon this point appears to be on all fours with *Atlantic Transport Co. of West Virginia* v. *Imbrovek*, 234 U. S. 52. That was a libel to recover for personal injuries sustained by the libellant while working as a stevedore in the employ of the Atlantic Transport Company unloading the Pretoria, a vessel lying in the port of Baltimore. The case on its merits was decided in the district court on principles of due diligence and negligence as those terms are defined, understood and applied in courts of common law. *Imbrovek* v. *Hamburg-American Steam Packet Co.* 190 Fed. Rep. 229, 238, 239. It was affirmed in a *per curiam* opinion in 113 C. C. A. 398, 408; 193 Fed. Rep. 1019. When the case came before the Supreme Court on *certiorari*, it was said by Mr. Justice Hughes at page 63: "The remaining question relates to the finding of negligence. It is urged that the neglect was that

of a fellow-servant and hence that the petitioner was not liable. Both courts below, however, concurred in the finding that the petitioner omitted to use proper diligence to provide a safe place to work. . . . It is sufficient to say that we are satisfied from an examination of the record that the ruling was justified." This seems to us to be a decisive determination of the matter against the contention of the defendant.

If, however, we are wrong in that, the defendant has suffered no harm. It is plain to us that the plaintiff could not have recovered under the instructions given without proving at least all that he would have been required to prove if the liability of the defendant was that which the latter now contends. There was ample evidence to support a finding of negligence. *Carroll* v. *Metropolitan Coal Co.* 189 Mass. 159. There was no reversible error in submitting the question of negligence to the jury nor in the charge touching it.

9. The defendant owned five eighths of the schooner. The defendant was the managing owner. As between himself and his co-owner he assumed the entire responsibility for keeping the vessel seaworthy and supplying and keeping in order the proper appliances appurtenant to her. The defendant and his co-owner together owed the duty to the plaintiff to keep the ratline in repair and in strong condition. It is a general and familiar principle of the common law that in cases of tort, where two or more are liable for the same cause of action, they are liable severally as well as jointly, and if one is sued alone the entire damages may be recovered against him. *Buddington* v. *Shearer*, 22 Pick. 427, 429. *Boston & Albany Railroad* v. *Shanly*, 107 Mass. 568, 579. *Corey* v. *Havener*, 182 Mass. 250. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 216, 217.

It was the exclusive obligation of the defendant under the subsisting arrangements between him and his co-owner to see to the condition of the ratline and keep it safe by repair or replacement. It was his personal failure to perform his duty in that particular which caused the injury to the plaintiff. There can be no doubt that under these circumstances a cause of action at common law arises in favor of the plaintiff against the defendant. *Osborne* v. *Morgan*, 130 Mass. 102. *Shannon* v. *Shaw*, 201 Mass. 393. *Fennell* v. *Peterson*, 225 Mass. 598. We are not aware of any principle of

maritime law which prevents the maintenance of such an action in the common law courts under the judicial code.

If the question be treated quite apart from authority and in accordance with the fundamental ethical rules of right and wrong, to which courts ordinarily resort for the settlement of conflicting contentions of parties in cases which are not within the sweep of any established principle of law, the same result is reached. The plaintiff has brought his action against the person whose failure in performance of duty has caused his injury. Whatever may be the rights of contribution of the defendant in admiralty, if any, against his co-owner, there seems to be no reason why the plaintiff should be denied a right of recovery against the person who directly has wronged him.

In *The Hine* v. *Trevor*, 4 Wall. 555, at page 571, it was said by Mr. Justice Miller respecting the remedy at common law, "This proceeding may be had against an owner or part owner of a vessel, and his interest thus subjected to sale in a common-law court of the State. Such actions may, also, be maintained *in personam* against a defendant in the common-law courts, as the common law gives; all in consistence with the grant of admiralty powers in the ninth section of the Judiciary Act." The present proceeding is a simple action at law to recover indemnity, damages or compensation for a maritime tort. It is a kind of remedy afforded by the common law as generally practiced and recognized without the aid of any enabling statute. It seems to us to come within the classification of remedies reserved to the suitor in common law courts by § 24, cl. 3, and § 256, cl. 3 of the judicial code. *The Hamilton*, 207 U. S. 398, 404, and cases cited. *The Belfast*, 7 Wall. 624, 644. *La Bourgogne*, 210 U. S. 95. As was said in *Rounds* v. *Cloverport Foundry & Machine Co.* 237 U. S. 303, 307, 308, "Actions *in personam* with a concurrent attachment to afford security for the payment of a personal judgment are in a different category. [That is, different from proceedings *in rem* in admiralty.] *The Belfast, supra,* [7 Wall. 624]; *Taylor* v. *Carryl,* 20 How. 583, 598, 599; *The Robert W. Parsons, supra,* [191 U. S. 17]. And this is so not only in the case of an attachment against the property of the defendant generally, but also where it runs specifically against the vessel under a State statute providing for a lien, if it be found that the attachment was auxiliary to the remedy *in personam.*

*Leon* v. *Galceran,* 11 Wall. 185; see also *Johnson* v. *Chicago &
Pacific Elevator Co.* 119 U. S. 388, 398, 399; *Knapp, Stout & Co.*
v. *McCaffrey,* 177 U. S. 638, 646, 648. . . . As this court said in
*Johnson* v. *Chicago & Pacific Elevator Co. supra,* in reviewing
*Leon* v. *Galceran,. supra,* it was held that 'the action *in personam*
in the State court was a proper one, because it was a common law
remedy, which the common law was competent to give, . . . that
the common law is as competent as the admiralty to give a remedy
in all cases where the suit is *in personam* against the owner of the
property; and that these views were not inconsistent with any
expressed in *The Moses Taylor,* in *The Hine* v. *Trevor,* or in *The
Belfast.'* The result of the decisions is thus stated in *Knapp,
Stout & Co.* v. *McCaffrey,* 177 U. S. 638, 646, 648. 'The true
distinction between such proceedings as are and such as are not
invasions of the exclusive admiralty jurisdiction is this: If the
cause of action be one cognizable in admiralty, *and* the suit be
*in rem* against the thing itself, though a monition be also issued
to the owner, the proceeding is essentially one in admiralty. If,
upon the other hand, the cause of action be not one of which a
court of admiralty has jurisdiction, *or* if the suit be *in personam*
against an individual defendant, with an auxiliary attachment
against a particular thing, or against the property of the defendant
in general, it is essentially a proceeding according to the course of
the common law, and within the saving clause of the statute
(§ 563) of the common law remedy.'" Whatever may be the pre-
cise scope of the word "remedy" as used in § 24, cl. 3, and § 256,
cl. 3 of the judicial code in saving to suitors "the right of a com-
mon-law remedy," it seems to us that the plaintiff in respect of his
right to sue the defendant alone is but employing the "remedy"
expressly reserved to him by the act of Congress, .and that he is
not seeking to mar the "uniformity and consistency" of the
maritime law which the Constitution of the United States pre-
serves. *Chelentis* v. *Luckenbach Steamship Co. Inc.* 247 U. S.
372, 382.

This case appears to us to be expressly covered by the principle
declared in *Belden* v. *Chase,* 150 U. S. 674. That was an action of
tort brought in a common law court of the State of New York,
wherein the plaintiff sought to recover damages against the
owner of the yacht Yosemite for so negligently navigating her as

to sink a steamboat on navigable waters belonging to the plaintiff. The case was tried in the State courts and ultimately resulted in a final judgment in favor of the plaintiff. *Chase* v. *Belden,* 104 N. Y. 86; *S. C.* 16 N. Y. St. Rep. 528, affirmed in 117 N. Y. 637. The case then went to the Supreme Court of the United States by writ of error. It was said by Chief Justice Fuller at page 691; "This action was for a maritime tort committed upon navigable waters and within the admiralty jurisdiction, and the appellate jurisdiction of this court over questions national and international in their nature cannot be restrained by the mere fact that the party plaintiff has elected to pursue his common law remedy in a State court. The doctrine in admiralty of an equal division of damages in the case of a collision between two vessels when both are in fault contributing to the collision, has long prevailed in England and this country. *The Max Morris,* 137 U. S. 1. But at common law the general rule is that if both vessels are culpable in respect of faults operating directly and immediately to produce the collision, neither can recover damages for injuries so caused. *Atlee* v. *Packet* Co. 21 Wall. 389. In order to maintain his action, the plaintiff was obliged to establish the negligence of the defendant, and that such negligence was the sole cause of the injury, or, in other words, he could not recover, though the defendant were negligent, if it appeared that his own negligence directly contributed to the result complained of."

Under these circumstances the plaintiff is entitled in our opinion to recover his whole damages against the defendant alone. There was no error in denying the requests for rulings by the defendant numbered 2, 6 and 7, which in various forms of words raised the point that one of the owners of the vessel could not be held to answer alone to the plaintiff, but that all the co-owners must be joined as defendants.

10. The only exceptions argued by the defendant are (1) that a verdict should have been ordered in his favor, (2) that his three requests for instructions numbered 2, 6 and 7 should have been granted, (3) that the question of negligence should not have been submitted to the jury. All his other exceptions are expressly waived on his brief. For the reasons already stated, we are able to discover no reversible error.

*Exceptions overruled.*